[No. 24013.   Department One.   January 6, 1933.]

GUY SANDERS *et al., Respondents,* v. GENERAL PETRO-
LEUM CORPORATION OF CALIFORNIA, *Appellant.*[1]

[1]Reported in 17 P. (2d) 890.

*Randall & Danskin* and *Bogle, Bogle & Gates,* for appellant.

*Gleeson & Gleeson,* for respondents.

HOLCOMB, J.—Two causes of action were consolidated for the purpose of trial by the lower court and dealt with therein as though but a single action. One action was brought by respondent Guy Sanders and the estate of Mary E. Sanders against appellant corporation; the other was brought by appellant corporation as plaintiff against the same parties defendants in an unlawful detainer action for the purpose of terminating a sub-lease made by appellant corporation to Guy Sanders and Mary E. Sanders.

In their second amended complaint, Guy Sanders and Mary E. Sanders, his mother, alleged that, in the early part of 1929, appellant fraudulently induced them to take a lease for a term beginning January 15, 1929, and ending January 14, 1939, on premises described therein, on which was an oil station and equipment, and fraudulently secured from them a promissory note for $1,050 and two notes for $4,000 each, all in favor of appellant. That the lease further provided, in part:

"If the lessee shall have fully and faithfully performed each and every obligation on his part to be performed hereunder, and if said note is paid on demand, the sum of $1050 so paid shall be applied upon the last 6 months rental of this lease but otherwise said note and/or said sum of $1050 or any unapplied portion thereof shall belong to the lessor as part of the consideration for this lease."

It was further alleged that, as a part of the fraudulent scheme, appellant sold plaintiffs the equipment at the oil station on the leased premises for $4,000, and the bill of sale was made out in the name of Harry O'Connor as vendor to cover up the fraudulent scheme. It is also alleged that, because of the fraudulent representations of appellant, and because it failed to keep an agency agreement with respondents to sell appellant's products at that station, respondents had been cheated and defrauded. The prayer was the contracts, lease and agreements between respondents and appellant be set aside, respondents' notes returned to them, and for general relief.

Mary E. Sanders died just before the second amended complaint was served, and her executors, Wm. A. Sanders and Howard W. Sanders, were substituted as parties plaintiff in her stead.

Appellant answered the second amended complaint, admitting that Guy and Mary E. Sanders delivered to it a note for $1,050 and a note for $4,000, and also that they had leased from appellant real estate described in the complaint, which lease contained the quoted provisions as to the $1,050 note. It denied all fraud and misrepresentation, as alleged.

As a cross-complaint, in its first cause of action, appellant alleged the death of Mrs. Sanders, the appointment of her executors, that they were made parties in her stead, and that Mary E: Sanders and Guy Sanders, on March 15, 1929, delivered to appellant a note for $4,000, payable in installments; that appellant served a claim for the balance of the note of $3,780.70 and interest on the executors of Mary E. Sanders on March 17, 1930, who rejected the claim on August 24, 1931; that four hundred dollars was a reasonable attorney's fee.

As a second cause of action in its cross-complaint,

appellant alleged the death of Mary E. Sanders, appointment of executors, after which they were made parties, and that, on about February 15, 1929, Mary E. Sanders and Guy Sanders delivered to appellant a note for $1,050, payable on demand; that it served a claim for the amount of that note and interest on the executors, who rejected the claim August 24, 1931; that one hundred dollars was a reasonable attorney's fee.

The third cause of action set up by cross-complaint was for the amount due on a merchandise account of $328.73.

In their reply, respondents denied substantially each of the affirmative causes of action and cross-complaint alleged by appellant which were inconsistent with the matters and things alleged in their second amended complaint. They further averred that, in September, 1931, appellant commenced an action in King county against them, and by so doing abandoned all things set forth in its three affirmative defenses.

The trial court, having been given to understand that one judgment should be entered in all the causes of action, at the conclusion of the trial without a jury, it being tried as an equity action, found that appellant had not been guilty of any fraud on respondents, and that respondents were not entitled to recover anything on their causes of action. It further found that there was a failure of consideration for the two notes of $4,000 and $1,050, denied appellant recovery upon those two causes of action, and gave it judgment on its third cause of action against Guy Sanders for the merchandise account, and further found that the action in King county should be dismissed.

From that part of the judgment denying recovery to appellant on the promissory notes, it appealed.

A motion by respondents to dismiss the appeal

on the ground and for the reason that the action was tried as one in equity, consolidated with an unlawful detainer case in which appellant was successful, cannot be appealed from as was done by appellant.

There is no merit in this motion. Appellant appealed from the only part of the judgment which, by stipulation, was made one judgment in two or more actions, on which it failed; that is, the adverse judgment as to it, upon which it has an undoubted right to appeal.

The trial court made thirty-four lengthy findings of fact and five brief conclusions of law, with some of which we are unable to agree.

The entire record in this case, including the correspondence and all documentary evidence and the testimony of the principal parties and witnesses largely from the statement of facts, itself, has been attentively examined.

The principal actor in this controversy on the part of respondents was Guy Sanders. He was forty-five years old, and had lived in and about Spokane for about fifteen years. He had been a salesman, and for four or five years preceding had been engaged in selling automobile accessories, equipment and parts in his own place. One Harry O'Connor had been the owner of a gasoline station business, fixtures and equipment, in Spokane, upon a month to month tenancy on lands owned by Ray Barton and wife. That station handled several kinds of oil and gasoline, and had been doing a large and profitable business.

In the latter part of 1928, O'Connor desired to sell his station, so that he could go to California. There is a conflict in the testimony as to whether the local manager of appellant first interested Guy Sanders in the station owned by O'Connor, Sanders saying that the manager did, but O'Connor saying that Sanders

approached him, himself. At any rate, he was interested in acquiring the service station. Appellant was also interested in having a station which would handle its gasoline and other products exclusively. That is, as the witnesses expressed it, "one hundred per cent their products."

Sanders talked to Cochran, the district manager of appellant, and to O'Connor about the station in December, 1928, and early in January, 1929, went to Seattle to see one Davies, who was the real estate manager for appellant, and discussed with him the financing of the purchase. O'Connor had asked Sanders five thousand dollars for the station and his equipment. About January 10, 1929, Sanders told O'Connor he would take the station at four thousand dollars, to which O'Connor agreed, and that O'Connor would turn it over on January 15, 1929. He also agreed to stay at the station with Sanders thirty days thereafter to help Sanders get acquainted with the trade and business, which he did. On January 28, 1929, Sanders took a ten-year lease from the owners of the real estate, Barton and wife, on the service station site.

It was thereafter arranged that Barton and wife should lease to appellant, who would sub-lease it to Guy and Mary E. Sanders. Accordingly, a written lease was prepared and executed by the parties as of the date of March 12, 1929, by appellant to Guy Sanders and Mary E. Sanders for the real estate on which the station was situate, specifying the rents to be paid in the total sum of $17,450 for the ten year term beginning January 15, 1929, and ending January 14, 1939, including the recitation of the receipt of the $1,050 note as heretofore quoted. The lease recited the property situated upon the premises leased, as one service station building valued at $1,200; Two Wayne 10 gallon visible gasoline pumps, value $250; four gasoline

storage tanks, value $160; six 30 gallon lubricating tanks, value $90; one air compressor, value $250; and three air, water and light stands, value $180; a total of $2,130. Some time in April, 1929, Guy Sanders caused the lease to be returned to appellant to be acknowledged by its corporate officers, and it was accordingly acknowledged on May 10, 1929, by its vice-president and secretary in California.

Sanders at once entered into possession of the demised premises for the purposes of the lease. Contrary to the contention of respondents, that created a tenancy, and made the instrument evidencing it, a lease. *McLennan v. Grant,* 8 Wash. 603, 36 Pac. 682.

The personal property and equipment which Sanders had purchased from O'Connor were concededly of the value of about $900. That left $3,100 for good will of the station which Sanders purchased from O'Connor.

O'Connor executed a bill of sale of the personal property to Sanders, and a bulk sales affidavit stating that he was selling to Sanders. The bill of sale and bulk sales affidavit were placed in escrow by O'Connor and Sanders with a bank until the four thousand dollars should be paid by Sanders to O'Connor. Later, in a letter to such bank, Sanders stated that he knew of no creditors of O'Connor, and the four thousand dollars which had been deposited by appellant for the benefit of Sanders was released and paid over to O'Connor on April 3, 1929.

Upon reading the record in this case, there can be no doubt the trial judge was right when he said that he could not find that any fraud had been perpetrated by appellant upon Guy Sanders. But neither was there any evidence that the transactions were so numerous, complicated or involved that Sanders did not know what he was doing. He was not an unlettered, ignorant man. His negotiations were chiefly

with O'Connor, the owner of the station site, but he was also anxious to get the financial backing, or the loan of the money necessary to purchase O'Connor's station and good will from appellant. To do that, he was willing to buy the station for the four thousand dollars, for which he gave his note to appellant to purchase the business and good will of O'Connor, not that of appellant. There was no business compulsion exercised on behalf of appellant.

Although respondents now contend that they were injured in their business by having the rental agreement of six cents per gallon reduced to three cents by appellant, Sanders himself admitted that, had he maintained the company's agreed wholesale price, he would have been given the six cent spread. His complaint during the time he operated the station was that appellant did not allow him to meet competition. That, however, was not a question of fraud, deception or coercion in procuring the station for him, originally.

Respondents contended in the trial court, with which it agreed, that, when appellant elected to cancel the contract and collect $625 rent unpaid and past due and $328.73 for supplies furnished by appellant, it then cancelled the sub-lease and forfeited the contract, by which it forfeited its right to sue, either for rent or supplies furnished; that the trial court allowed it to recover all its items, which was the same as allowing it to elect to rescind its agreements and yet recover part of the indebtedness secured by the contract.

The record undisputedly shows that Guy Sanders closed the station on September 2, 1929, after he and his mother had started their suit for rescission against appellant. Whatever the cause, they were then in arrears of rent in a considerable sum. The station remained closed from that time until September 28, 1929,

when a three-day notice having been served by appellant to pay rent or vacate and having been ignored, the unlawful detainer suit was started on the lease by appellant. A valid writ of restitution in a proper action out of a court of undoubted jurisdiction, was sued out and appellant put in possession of the premises on September 28, 1929. The personal property which was in the station when Sanders purchased it from O'Connor was left in the station when the writ of restitution was executed, and still remained there at the time of trial.

Appellant, on non-payment of the stipulated rent, undoubtedly had the right to bring an action in unlawful detainer and repossess the premises. That was not a "forfeiture" of the lease contract, but a termination of it under process of law.

Appellant still retains possession of the station and premises, including the fixtures and equipment, operating it, through an employee, on a commission basis. Whatever, therefore, was the value of the good will, whether obtained in one way or another, has been secured by appellant, which it has and will retain. It has also procured the unexpired term of the lease, which must be of some value in connection with the good will of the station. It has all the personal property, which includes the property above mentioned in the lease.

Although, strictly speaking, Sanders borrowed the money from appellant with which he bought the service station and good will from O'Connor, appellant has now procured all that Sanders bought from O'Connor. Although, also, that could not be called either a want of consideration, or a failure of consideration, this being an equity action, we are convinced that appellant should not be allowed to recover the balance due on the four thousand dollar note. By its terms, it was

payable in monthly installments of one hundred dollars each, and by their agency contract was to be paid out of gasoline sales at one cent per gallon, all of which was ended, September 28, 1929. It would be inequitable to enforce payment thereof under such circumstances.

The $1,050 note is upon an entirely different footing. There was no fraud or overreaching in obtaining it from Sanders and his mother, and it was stated in the lease, voluntarily entered into by them, that it should belong to the lessor, as part of the consideration of the lease and as payment for the last six months' rental of the lease. It was the same as if it had been paid in cash.

In *Dutton v. Christie*, 63 Wash. 372, 115 Pac. 856, referring to a similar covenant in a term lease, we said:

"When the appellants paid this money as a consideration for the lease, the title to it passed to the respondent. Their breach of the lease cannot divest his title."

Compare *General Petroleum Corp. v. Wright's, Inc.*, 166 Wash. 636, 8 P. (2d) 291.

Manifestly, appellant is entitled to recover from respondents the amount of the $1,050 note, with interest thereon and attorney's fees as prayed.

Appellant also complains of the rejection of items of costs for two witnesses who were agents and employees of appellant, who attended the trial, but did not testify. The trial court allowed costs to appellant generally, but re-taxed the costs to deny the mileage and attendance of the two witnesses. The affidavit in behalf of their allowance made by appellant was controverted by respondents, and there was nothing to show that there was an abuse of discretion on the part of the trial court in disallowing their fees for attend-

260

ance and mileage, especially since the trial court, or this court, might divide or apportion the costs in an equitable action.

The judgment of the trial court is reversed in so far as it disallowed judgment on the $1,050 note, with interest from date of demand, as specified, and attorney's fees, and the case remanded with instructions to proceed accordingly.

In all other respects, the judgment stands affirmed. Appellant will recover costs of appeal.

TOLMAN, C. J., MITCHELL, PARKER, and MILLARD, JJ., concur.