[No. 27368.  Department One.  January 7, 1939.]

J. W. FLINT, *Respondent*, v. ROBERT E. BRONSON *et al.,
Appellants*, J. L. CARROLL *et al., Respondents.*[1]

[1]Reported in 86 P. (2d) 218.

*Jones & Bronson,* for appellants.

*Landon & Landon* and *Hyland, Elvidge & Alvord,* for respondents Flint *et al.*

*Tyre H. Hollander* and *Clarence Hardesty,* for respondents Carroll *et al.*

*Kumm & Hatch,* for respondent Cascade Fixture Company.

*Poe, Falknor, Emory & Howe,* for respondent Lawyers & Realtors Title Insurance Company.

MAIN, J.—This action was brought to foreclose a lien for labor and material furnished in the construction of a dwelling house. Aside from the plaintiff, there were a number of other lien claimants who were made parties defendant. The principal defendants

were Robert E. Bronson and Marie Bronson, his wife, the owners of the property. A trial was to the court without a jury, and resulted in a decree sustaining a number of the liens and in a personal judgment, either against the contractor or against the owners of the property. From the decree, as entered, Bronson and wife appeal.

The facts, while somewhat complicated, may be summarized as follows: In the early spring of 1936, the Seattle First National Bank, as trustee under the will of N. H. Latimer, deceased, and Mrs. Margaret M. Latimer were the owners of a certain tract of land in the city of Seattle, known as Laurelcrest addition. The First Rental & Sales Corporation, of which J. L. Carroll was president, had a contract with the owners under which, as real estate agents, they were attempting to sell the lots comprising the tract. For the purpose of expediting the sale and attracting customers, it was agreed between the owners and the sales corporation that a model home be erected upon one of the lots, to be sold at cost. For the purpose of financing the building of this home, $7,250 was borrowed, which was secured by a first mortgage upon the property. William J. Bain was employed as architect, and he prepared the plans for the dwelling house.

May 4, 1936, a contract for the erection of the house was entered into between Carroll and C. A. Steele, the contractor, whereby the latter agreed to build the home, complete, for $7,300. When the project was well under way, but before the house was completed, it was sold to the appellants, who made a down payment at the time the earnest money receipt was signed, and assumed the mortgage and agreed to pay an additional sum in cash upon the consummation of the deal.

Desiring certain changes and additions in the house, the appellants entered into a separate contract with

Steele, the contractor, by which the latter agreed to do this additional work for a sum specified. Steele, the contractor, was unable to pay for all of the material and labor furnished in the construction of the building and a number of claims for liens were filed, as above indicated. These were resisted by the appellants.

After the action was brought, Carroll, who had financed the project, was owing the contractor a substantial balance, and he paid, of this sum, into the registry of the court, $1,825. The other six hundred dollars was paid over to The Lawyers & Realtors Title Insurance Company to indemnify that company against loss by reason of the allowance of a policy of title insurance. Subsequently, $500.59 was, by the title insurance company, paid over to the Grunbaum Bros. Furniture Company, which had on file a conditional sales contract for linoleum which had been used in the house. The balance of the six hundred dollars was paid into the registry of the court.

The first question presented is whether certain of the claimants, who had a right to liens on account of labor performed, had forfeited that right by agreeing with others, who had furnished material, that the latter should share in the fund paid into court. The fund was sufficient to pay the labor claims, had it all been applied to that purpose.

Under Rem. Rev. Stat., § 1157a [P. C. § 9664b], persons performing labor have a prior right over those furnishing material. The only persons that are complaining about this distribution are the appellants. Had the labor claims been paid in full out of the money deposited in the registry of the court, the claims for material would have been increased and the property would have been subject to a lien in the same amount as it was after a portion of the money was applied to the labor claims and a portion to the claim for material.

We do not see how the appellants were prejudiced by this distribution, even though it did not conform to the statute.

■ The appellants complain of the provision of the decree which sustained the lien claim of the Builders Hardware & Supply Company and gave a personal judgment against the appellants for the amount thereof. Whether the personal judgment was properly entered, depends upon whether the appellants ordered the material which was involved in this claim. Upon this question, the evidence is in dispute. While the trial judge did not formally make findings of fact and conclusions of law, separate and distinct from the decree, he prepared a comprehensive memorandum opinion in which his views on the facts were unequivocally and distinctly stated. With reference to the right of the claimant to a personal judgment against the appellants, the court said, after reviewing the evidence, that the appellants were "primarily liable." The record, as we view it, furnishes no reason why the judgment of the trial court upon this question should be disturbed.

■ With reference to this same claim, the appellants complain of the allowance of the lien. This question, in view of the fact that a personal judgment was entered against the appellants, from a practical standpoint, so far as this case is concerned, is not very important. The objection to the lien is that it was not filed within ninety days following the date of the last delivery of material. The house, as constructed, as testified by the architect, had a fixed glass window in the front door, which was changed to make out of it what is called a "wicket," and this was done at the request of Mr. Bronson. The cost of the change was a small sum, to-wit, $1.55. The lien claim, if the time dates from this change in the door, was filed in time.

On the other hand, if the making of that change did not extend the time for filing the lien, it was not timely filed.

In this connection, the appellants rely upon the cases of *Petro Paint Mfg. Co. v. Taylor,* 147 Wash. 158, 265 Pac. 155, and *Brown v. Mychel Co.,* 186 Wash. 97, 56 P. (2d) 1020; but we are of the view that the rule of those cases is not here applicable. This case, as it appears to us, falls within the holdings of the cases of *Rieflin v. Grafton,* 63 Wash. 387, 115 Pac. 851, and *American Plumbing & Steam Supply Co. v. Alavekiu,* 154 Wash. 436, 282 Pac. 917, because, in the present case, the material was not furnished for the purpose of prolonging the time for the filing of the claim or for the purpose of renewing a right to a lien which had been lost by delay.

The appellants complain of the payment to the Grunbaum Bros. Furniture Company by Carroll of the sum of $500.59 for linoleum furnished. As stated, Carroll retained, out of what he owed the contractor, the sum of six hundred dollars and deposited it with The Lawyers & Realtors Title Insurance Company to indemnify that company against loss by reason of the conditional bill of sale filed for the linoleum. No one is complaining of this payment except the appellants, and it was not made an issue upon the trial of the case. When the matter was called to the attention of the court upon the trial, no objection appears to have been made. The court said, at the time: "I hear no objection, and I do not see any objection;" that is, there was no objection to the court not going into the matter. It is true that the Grunbaum Bros. Furniture Company had been made a party to the action and had been defaulted out of it. They, apparently, preferred to rely upon their right to retake the linoleum rather than waive that right by seeking

to foreclose a claimed lien. There is no claim that the money was not due the Grunbaum Bros. Furniture Company, or that there was any fraud or bad faith in connection with the matter. We fail to see how the appellants were prejudiced by the payment of this money to the furniture company.

When the matter was heard in this court, a request was made that we allow here additional attorney's fees to respondents who had been successful in securing a decree foreclosing their respective liens. In 1893, the legislature passed an act (Laws of 1893, chapter 24, p. 37, § 12; Rem. Rev. Stat., § 1141 [P. C. § 9717]) creating and providing for the enforcement of liens for labor and material. Section 12 of this act, p. 37, classified the liens provided for and fixed their priorities; also provided for the foreclosure of the liens; and the section concluded with this sentence:

"The court may allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior and supreme courts."

It will be noted that it is there said that the court may allow, as part of the costs of the action, a reasonable attorney's fee "in the superior and supreme courts."

In the case of *Lavanway v. Cannon*, 37 Wash. 593, 79 Pac. 1117, a request was made by lien claimants in this court for attorney's fees here, and it was there held that it had not been the practice of the court to allow independent attorney's fees in this court, in cases of this character. It was there said:

"Respondents ask for a further allowance in this court for attorney's fees here. It has not been the practice of this court to allow independent attorney's fees in this court, in cases of this character. We think such allowances are more properly within the jurisdiction of the trial court, to be allowed at the time of the trial.

Four hundred dollars was so allowed, and we think that amount was sufficient. The request is therefore denied."

While the statute above referred to was not mentioned in the opinion, it was specifically called to the attention of the court in the briefs in the case.

In the case of *Sweatt v. Hunt,* 42 Wash. 96, 84 Pac. 1, there was again a request for an allowance of attorney's fees in this court in a lien foreclosure, and it was there said:

"The court below allowed the respondents an attorney's fee of $150 for foreclosing the lien. Respondents ask us to make an additional allowance of $200. We have heretofore refused to make orders of this kind. *Lavanway v. Cannon,* 37 Wash. 593, 79 Pac. 1117. The request is therefore denied."

In that request, the statute was again called to the attention of the court.

In 1917 (Laws of 1917, chapter 68, p. 231, § 5; Rem. Rev. Stat., § 1157a [P. C. § 9664b]), the legislature passed an act relating to liens upon chattels and amending sections of the previous statutes, and added a new section which is called "Section 1157a." This section covers substantially the same subject-matter as § 12 of the act of 1893, reduces the classes as to priority from four to two, and changes the wording of the last sentence of the previous section to read as follows:

"The court may allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the action."

It will be observed that, in this latter act, instead of saying that the court may allow a reasonable attorney's fee "in the superior and supreme courts," the phraseology is simply that the court may allow "a

reasonable attorney's fee in the action." Whether the latter wording is more restrictive than the former, we shall not inquire, but shall assume, without so deciding, that the meaning is the same in the two sections.

In *Seattle Lighting Fixture Co. v. Broadway Central Market*, 156 Wash. 189, 286 Pac. 43, 1119, and after the passage of the 1917 act, there was a request, in a lien foreclosure case, for the allowance of additional attorney's fees in this court, and it was there said:

"Respondents have also applied for additional attorneys' fees. The court found that $150 was a reasonable attorneys' fee to be allowed in this action, and no exception was taken to the finding, and it is therefore binding on us. Also this court has adopted the rule that additional attorneys' fees will not be allowed in the supreme court in lien foreclosures."

The first of the three cases mentioned was decided March 23, 1905, more than thirty years ago, and since that time there have been seventeen sessions of the legislature, including two special sessions, and that body has not changed the rule with reference to allowing costs in this court in lien foreclosure cases. It cannot be said that the legislature overlooked the matter, because, in 1917, as above appears, they legislated upon the very question and changed the wording from a reasonable attorney's fee "in the superior and supreme courts" to simply read "a reasonable attorney's fee in the action." The rule of the cases cited having been the law of this state for so many years and the legislature not having disturbed it, even though legislating upon the very question, we think the rule should be adhered to.

It is true that the superior court, in the case now before us, in its decree limited the attorney's fees to the work done in that court; but this is not a controlling circumstance. The fact that the superior court

so limited the attorney's fees cannot have the effect of modifying the rule of the cases cited.

The decree appealed from will be affirmed.

STEINERT, C. J., HOLCOMB, BLAKE, and ROBINSON, JJ., concur.