[No. 30992. Department One. July 29, 1949.]

CHARLES WILLSON FRANKLIN et al., Appellants, v. GEORGE J. FISCHER et al., Respondents.[1]

[1]Reported in 208 P. (2d) 902.

*Crollard & Crollard,* for appellants.
*Lloyd D. Cunningham,* for respondents.

HILL, J.—This is an action to cancel a lease and recover possession of leased premises, and for rentals due under the lease, with a cross-complaint asking for damages against the lessors for their failure to keep the premises in repair.

The leased premises consist of a service station, restaurant, and tourist cabins. By article 3, the lessee was to pay, as "full rental for the premises during the effective term of this Lease": a gallonage charge for the use of the "automotive equipment, pumps and like items of personal property"; thirty-five per cent of the gross receipts from the tourist cabins, for the use thereof; fifty per cent of the gross receipts of the Wurlitzer phonograph and phono-

graph records, for the use thereof; fifty per cent of the net receipts of "all other coin operated machines," for the use thereof; five per cent of the gross sales from October 1st to March 31st each year, and seven per cent of the gross sales from April 1st to September 30th of each year, for the use of the restaurant and its equipment.

Article 14 of the lease is as follows:

"It is agreed by the Lessor that after the first 12 months of this lease the minimum amount of Rental from all sources shall not be less than $400.00 per month during the six (6) months period beginning October 1, and ended March 31, and not less than $600.00 per month during the months beginning April 1, and ended September 30, each year during the term of this lease."

It is the failure by the assignees of the lessees to pay the minimum rentals referred to in article 14 on which the lessors base their right to cancel the lease and recover the rentals due thereunder.

The trial court concluded that: (1) Article 14 did not obligate the lessees to pay the minimum rentals therein provided because, by the language of the article, they did not covenant or agree to pay such minimum rentals; and, (2) if article 14 was by its terms binding upon the lessees, there had been an oral modification whereby the lessors had agreed with the assignees of the lessees that article 14 would not be enforced if they took an assignment of the lease, which oral modification agreement was made prior to the time that the assignees paid the lessees three thousand dollars for the assignment of the lease. The trial court therefore refused to cancel the lease or to restore the lessors to possession, and awarded the assignees of the lessees damages for the unreasonable delay of the lessors in making certain repairs. The lessors appeal.

If there was a valid modification of the lease making article 14 inoperative, it becomes unnecessary to determine whether the lessees were obligated to pay the minimum rentals provided for therein.

Was there a valid modification? We have a hotly contested issue of fact as to what took place at a meeting in

Mr. Franklin's office on the evening of March 27, 1947. Seven people were present practically all of the time: Mr. and Mrs. George J. Fischer (the respondents), Mr. and Mrs. Henry Fischer, Mr. and Mrs. J. J. Adams, and Mr. Charles W. Franklin (one of the appellants); and an eighth, Mr. W. H. Kirby, was present part of the time.

Mr. and Mrs. Adams were the original lessees, and it was contemplated that they would assign their interest in the lease to the four Fischers. To do so, it was necessary to have the consent of Mr. Franklin, as one of the lessors. Mr. Kirby was the notary, and was called after all the others were in Mr. Franklin's office. He took the acknowledgments of Mr. and Mrs. Adams to the assignment, and the acknowledgment of Mr. Franklin to the consent to the assignment (he having secured Mrs. Franklin's signature and taken her acknowledgment earlier in the day). Also, he prepared a third document (going into an outer office for that purpose) denominated "Acceptance of Assignment," which all four of the Fischers then signed and acknowledged.

Mrs. Adams did not testify. Mr. Kirby and Mr. Adams heard no mention of article 14 of the lease. Mr. Franklin testified positively that he was not asked to and did not agree to waive the provisions of article 14; that the subject was mentioned only once, and that was just as the Fischers were going out the door, when Mrs. George Fischer turned and asked, " 'What if we can't make the minimum rental payments? What are you going to do?' " and he replied, " 'I do not know.' "

Each of the four Fischers said that article 14 was discussed with Mr. Franklin that evening, and that he said in effect that it would not be operative. They were not all in accord as to whether that discussion was before or after they accepted the assignment and became obligated under the lease; however, the testimony of George H. Fischer was definite and specific that, before they accepted the assignment, Mr. Franklin had promised that they would not be held to the minimum rentals provided for in article 14.

■ While George H. Fischer was a "fast" witness on direct examination and most reluctant on cross-examination, the trial court accepted his version of what had occurred (substantially corroborated as it was by the other three Fischers) in preference to the testimony of Mr. Franklin and Mr. Adams. This is a situation in which the trial judge was in an infinitely better position than is the appellate court to determine what credence should be given the various witnesses, and we cannot say that the evidence preponderates against the trial court's finding that the lease was modified by an agreement that article 14 would be inoperative. The judgment must therefore be affirmed unless there is merit in the appellants' contentions that there was no consideration for the oral modification, and that the modification agreement was void by reason of the fact that it was not in writing and was not acknowledged, as required by statute, Rem. Rev. Stat., § 10618 [P.P.C. § 719-1].

■ Whether or not the substitution of the assignees, hereinafter referred to as the respondents, for the original lessees, was a benefit to the lessors, hereinafter referred to as the appellants, is immaterial under the circumstances here existing. It must be regarded as established that the respondents paid three thousand dollars to the original lessees, and that they would not have done so if the appellants had not agreed that article 14 would not be enforced. The consideration for the oral modification was the detriment to the respondents in paying three thousand dollars and taking over the property. They have changed their situation to such an extent that they cannot be adequately compensated in damages or placed in their original position. It is well established that a consideration may consist as well in a detriment to the person to whom a promise is made as in a benefit to the other party. 32 Am. Jur. 150, Landlord and Tenant, § 150.

■ The same payment and circumstances constituted a complete performance of the respondents' part of the modification agreement and removed the agreement from

the statute of frauds. Without repeating it, we approve again the statement from *Garbrick v. Franz,* 13 Wn. (2d) 427, 431, 125 P. (2d) 295, found on pages 418-419 of *Vance Lbr. Co. v. Tall's Travel Shops,* 19 Wn. (2d) 414, 142 P. (2d) 904. Consequently, we find no merit in the appellants' contention that there was no consideration for the oral modification or that it was void because it did not comply with the statute of frauds.

We are also of the opinion that there was no abuse of discretion on the part of the trial court when it permitted the respondents to amend their answer to present the defense of an oral modification of the lease, and that no prejudice is shown. It was necessary in order that the real matter in dispute might be determined. Rule of Practice 6 (2), 18 Wn. (2d) 34-a.

The appellants now advance the contention that appellant Helen Franklin knew nothing of the oral modification and that, therefore, the modification cannot be binding upon her nor upon the marital community consisting of herself and appellant Charles Willson Franklin. We have combed the record for any suggestion that this theory was presented to the trial court, and find none. It appears for the first time in the reply brief. If that was to be an issue in the case, the respondents were entitled to an opportunity to establish ratification or to show any conduct amounting to an estoppel on the part of Mrs. Franklin to contest the validity of the modification. As stated in *Benedict v. Hendrickson,* 19 Wn. (2d) 452, 143 P. (2d) 326:

"Notwithstanding this explicit mandate of the statute [Rem. Rev. Stat., § 6893], this court has upheld contracts and encumbrances executed and acknowledged by the husband alone. These decisions rest upon the doctrine of estoppel—typical instances being either (a) where, having knowledge of the contents of a proposed contract, the wife requests her husband to enter into it and she afterwards accepts the fruits of it [citing cases], or (b) where, after execution by the husband, she ratifies it. [Citing cases.]"

That portion of the judgment dismissing the appellants' action whereby they sought to cancel the lease and regain possession of the premises, is affirmed.

There remains for consideration only the assignment of error that the trial court erred in awarding the respondents the sum of eighty dollars as damages for the appellants' failure to keep the roof in repair and one hundred fifty dollars as damages for their failure to supply water, and in allowing an attorney's fee of three hundred fifty dollars.

The respondents' right to recover damages is based upon the appellants' breach of their covenant "to keep underground equipment and roofs of buildings in repair."

The roof over the restaurant leaked; the appellants were notified thereof by a letter dated April 29, 1948. The fact that "the state health board has closed the resturant because of the condition of the water supply" was brought to the appellants' attention by a letter dated June 8, 1948. The evidence shows that the appellants proceeded to have both situations remedied as rapidly as possible under the existing circumstances.

■ Under the general rules of law applicable to such situations, a lessee, before any damages can be recovered from a lessor for breach of a covenant to keep in repair, would have to establish timely notice to the lessor of the need for repairs, and that the lessor failed to make them within a reasonable time under the circumstances. The rule is well stated by Judge Hay in *Asheim v. Fahey,* 170 Ore. 330, 133 P. (2d) 246, 145 A. L. R. 861, in these words:

"In the absence of a special agreement to make repairs upon the demised premises, a landlord is under no duty to do so. 32 Am. Jur., Landlord and Tenant, section 705. He may, of course, by the terms of his lease, covenant to make repairs, but the law in that connection is that he must have timely notice of the need for repairs before he is obliged to make them. If, after such notice and a reasonable opportunity to make the repairs, the landlord fails to do so, and damage to the tenant or his invitees results, the landlord may be held liable. *Ashmun v. Nichols,* 92 Or. 223, 234, 180 P. 510; *Teel v. Steinbach Estate,* 135 Or. 501, 504, 296 P. 1069."

See, also, 32 Am. Jur. 587, 589, Landlord and Tenant, §§ 710, 713; annotations, 28 A. L. R. 1525 and Ann. Cas. 1912B, 353.

The respondents not only failed to bring themselves within the general rule entitling them to recover for breach of a covenant to repair, but article 10 of the lease limits their right to recovery to those situations in which the lessors' breach or default in performance of any covenant or obligation continues for a period of thirty days after notice thereof. No breach of any covenant to repair continued for thirty days after notice. The trial court erred in allowing the respondents any damages for breach of the covenant to keep in repair.

█ The attorney's fee is authorized by the lease.. The final paragraph of article 10 provides that:

"In any action between the parties hereto, their successors or assigns, for a breach or for the enforcement of any of the terms or conditions of this Lease, a reasonable attorney's fee, to be fixed by the court, shall be added to and be made a part of the recoverable cost in such action, in favor of the successful party."

The appellants, having asked for an attorney's fee of three hundred fifty dollars in accordance with this provision of the lease, cannot well object to an allowance to the "successful party" in that amount.

That portion of the judgment which reads:

"It is further ordered, adjudged, and decreed that the defendants [respondents] have judgment against the plaintiffs [appellants] in the sum of $80.00 for damages sustained because of the plaintiffs failure to keep the roof in repair and damages in the sum of $150.00 for plaintiffs failure to supply water";

will be stricken therefrom; and the judgment is in all other respects affirmed.

█ The respondents ask for an attorney's fee of seven hundred fifty dollars for services on this appeal. The right to other than the statutory attorney's fee rests upon the provision in the contract of the parties last quoted, which we believe does not contemplate an attorney's fee in other

than the superior court. Neither side has briefed or argued the question of whether this court can or should make an award of an attorney's fee for services on an appeal under such a contract provision. It will be noted, however, that in construing Rem. Rev. Stat., § 1157a [P.P.C. § 172-11], which provides that in certain types of lien foreclosures, ". . . The court may allow . . . a reasonable attorney's fee in the action," and Rem. Rev. Stat., § 1141 [P.P.C. § 180-25], which provides that ". . . The court may allow . . . a reasonable attorney's fee in the superior and supreme courts," we have consistently refused to make any allowance of attorneys' fees in addition to that made by the superior court. *Standard Lbr. Co. v. Fields,* 29 Wn. (2d) 327, 354, 187 P. (2d) 283. See *Flint v. Bronson,* 197 Wash. 686, 692, 86 P. (2d) 218, where our cases on this point are reviewed.

The respondents, having prevailed on the major issue involved in this appeal, *i.e.,* whether they were obligated to meet the minimum rentals referred to in article 14 of the lease, are entitled to their costs.

JEFFERS, C. J., BEALS, STEINERT, and MALLERY, JJ., concur.