[No. 33334. Department Two. May 31, 1956.]

H. A. LUNDSTEN *et al., Respondents,* v. ROSS C. LARGENT *et al., Appellants.*[1]

[1]Reported in 298 P. (2d) 488.

*Simmons, Simmons & Yates,* for appellants.

*Wright, Booth & Beresford (JoAnn R. Locke,* of counsel), for respondents.

HILL, J.—This action was brought under the Federal housing and rent act of 1947 as amended (50 U.S.C.A. Appendix, §§ 1881-1884, 1891-1906) and the regulations issued thereunder, to recover three times the amount of certain rental overcharges, to secure the return of a lease deposit in the amount of one hundred sixty dollars, and for an attorney's fee of two hundred dollars. An action of this

character can be maintained against the person who "retains" any payment of rent in excess of the maximum prescribed. 50 U.S.C.A. Appendix, § 1895.

The overcharges amounted to twenty dollars a month for twelve months (two hundred forty dollars) and were not seriously contested.

█ The overcharge being established, the plaintiffs are entitled to recover three times the amount thereof unless the defendants proved that the overcharge, or the retention thereof, was neither willful nor the result of failure to take "practicable precautions" against the occurrence thereof. *Shuh v. Oakes* (1951), 38 Wn. (2d) 336, 229 P. (2d) 507.

The defendants urge that the overcharge and the retention thereof were not willful and the damages should not be trebled; and that the plaintiffs committed waste and damaged the premises in five particulars, to the property owners' damage in the amount of $362.78. The defendants' claims about the condition in which the plaintiffs left the property when they surrendered possession are particularly important, not only on the issue of damages, but also on the issue of justification of the defendants' failure to reimburse the plaintiffs for the overcharges in accordance with the order relating thereto.

The defendants, as lessors, and the plaintiffs, as lessees, entered into a lease for a period of three years from August 10, 1950, covering a dwelling house known as 4736-½ University way, in Seattle. We quote the following provision from the lease, inasmuch as the right to the last two months' rent, which was paid in advance, is one of the issues in the case: "Receipt is hereby acknowledged of Two Hundred and forty dollars, being the first and last two months [rent]."

The plaintiffs remained in possession until September 20, 1951, paying the rent for each month except the month of September, 1951. When it became necessary for them to move from Seattle, they asked and received permission to sublease the premises but were unsuccessful in their efforts so to do. Mr. Largent then agreed to release them from their obligations under the lease and to accept surrender of

the premises, but refused to return any part of the last two months' rental that had been paid in advance. He immediately rented the premises, effective October 1, 1951, to another tenant, also at the rate of eighty dollars a month.

Mr. Largent, a real-estate broker of many years' experience (but retired when the case was tried), had registered all of his property used for dwelling purposes when the act in question became effective in the Seattle area. He had not registered the premises at 4736-½ University way at that time because they were then rented as business property. He testified that he "overlooked" registering the property when he leased it to the plaintiffs as a dwelling in August, 1950; nor did he register it during the period of their occupancy. He first registered the property on October 16, 1951, giving the name of the then-tenant, R. Salonen, and indicating that it was first rented on October 1, 1951, thus failing to disclose the prior lease to the plaintiffs and their occupancy of the premises as a dwelling for more than thirteen months. This, together with his extensive experience as a real-estate broker, was unquestionably a factor in the trial court's conclusion that he had acted willfully in failing to register the premises as he should have done in August, 1950.

On May 29, 1952, the area rental director issued an order fixing the maximum rental of the premises at sixty dollars a month, effective as of September 10, 1950, and directing the refund, within thirty days, of any rent collected in excess of that amount. On June 2, 1952, Mr. Largent wrote the plaintiffs expressing his willingness to make reimbursement for the rental overcharges but asserting that the plaintiffs owed him a considerable amount for damages to the premises and the expenses he had incurred in making the place habitable again, and suggesting that they or their attorney discuss the matter with him or his attorney. The plaintiffs elected to discuss the matter in court, and commenced this action July 22, 1952.

The one item of damage to the defendants' property conceded by the plaintiffs was "about a dozen dart holes" in a

bedroom door. No evidence was offered as to the amount of the damage to the door.

The defendants failed to call as a witness the person to whom Mr. Largent testified he had paid sixty-five dollars for cleaning the premises and who should have been in a position to corroborate Mr. Largent's testimony as to the claimed deplorable condition of the premises when the plaintiffs surrendered possession. The defendants were, therefore, in no position to complain when the trial court elected to believe the plaintiffs instead of Mr. Largent and found against the defendants on each of the five items of damage alleged in their cross-complaint. The trial court concluded that the defendants' urging of those items of damage as the basis for the adjustment of the rental overcharges was "specious and unfounded."

■ With some travail of mind and spirit, we have recognized that our courts have no discretion in the matter of entertaining actions for damages under the Federal statutes with which we are here concerned, and little discretion in the consideration of treble damages when an overcharge is established. *Walker v. Gilman* (1946), 25 Wn. (2d) 557, 171 P. (2d) 797. Being convinced that Mr. Largent's failure to register the premises was willful, and that his excuses for not refunding the amount of the overcharges as directed were "specious and unfounded," the trial court was obligated to award treble damages. *Shuh v. Oakes, supra*; *Walker v. Gilman, supra*; *Gutman v. Lawton Estates* (1952), 102 F. Supp. 724.

To this point, the issues seem purely factual. The right of the lessors to retain the rent paid in advance, even though they consented to a termination of the lease, presents a legal question.

■ The general rule is that the right and title to advance rentals passes to the lessor on the payment thereof, and the lessee can derive further benefit therefrom only by occupying the premises during the period for which the rent is paid. *Sanders v. General Petroleum Corp.* (1933), 171 Wash. 250, 17 P. (2d) 890; *General Petroleum Corp. v. Harry Wright's, Inc.* (1932), 166 Wash. 636, 8 P. (2d) 291, 13 P.

(2d) 1080; *Rockwell v. Eiler's Music House* (1912), 67 Wash. 478, 122 Pac. 12, 39 L. R. A. (N.S.) 894; *Dutton v. Christie* (1911), 63 Wash. 372, 115 Pac. 856.

The plaintiffs, in support of their contention that one hundred dollars (the one hundred sixty dollars paid at the time the lease was executed, for the last two months' rental under the lease, less the sixty dollars the plaintiffs owed the defendants for the September, 1951, rental) should be returned to them, cite *Stern v. Green* (1923), 127 Wash. 429, 221 Pac. 601. That is a lease-deposit case, and there is a "manifest difference" between a lease deposit and a payment of rental in advance. See *Dutton v. Christie, supra.*

■ Unfortunately for the defendants, however, they could not "demand, receive or retain" any "prepayment of rent except payment in advance of the next periodic installment of rent for a period . . . no longer than one month." This is by reason of a regulation adopted under the Federal housing and rent act of 1947 as amended. 24 C. F. R. (1949 ed.) § 825.2(c). (Plaintiffs referred to 16 Fed. Reg. 12882, § 73, dated December 22, 1951. Not liking *ex post facto* regulations, we checked further and found the same regulation, cited above, in effect on August 10, 1950.)

We are of the opinion that the trial court did not err in crediting to the rental due for September, 1951, sixty of the one hundred sixty dollars paid in advance by the plaintiffs, and in giving the plaintiffs judgment for the remaining one hundred dollars.

■ The trial court allowed two hundred fifty dollars for the plaintiffs' attorney's fee. We agree with the defendants that the allowance for that purpose should be reduced to two hundred dollars, that being the amount prayed for in the complaint. The plaintiffs place emphasis upon the fact that the attorney for the defendants agreed that the court might fix the attorney's fee if the plaintiffs were entitled to recover one. However, such an agreement was to avoid the necessity of calling witnesses on the issue of the amount of the fee, and the concession by the attorney for the defendants was unquestionably limited to the amount prayed for in the complaint.

The plaintiffs ask for additional attorney's fees in this court and point out that 50 U.S.C.A. Appendix, § 1895, provides that the person making an overcharge shall be liable to the person from whom the overcharge is received or retained "for reasonable attorney's fees and costs as determined *by the court*" (italics ours), in addition to three times the amount of the overcharge.

Our construction of the language used would limit "reasonable attorney's fees" to those fixed by the trial court. It has been our policy not to fix attorneys' fees for services in this court, even under statutes much more explicit than that now under consideration. See *Franklin v. Fischer* (1949), 34 Wn. (2d) 342, 208 P. (2d) 902; *Flint v. Bronson* (1939), 197 Wash. 686, 86 P. (2d) 218. However, several Federal courts and a few state courts have held to the contrary. It is conceded that the determination of additional "reasonable attorney's fees" for services in this court is discretionary. We shall exercise that discretion rather than engage in a dialectical discussion of what courts Congress had in mind when it used the phrase "determined by the court."

Under all of the circumstances of the case, we are of the view that additional attorney's fees are not warranted for the services rendered in this court, other than the statutory attorney's fee allowed to the prevailing party. See *Griffith v. Norman* (1948), 170 F. (2d) 745.

The judgment is affirmed as to the award of treble the amount of the overcharges, as is the dismissal with prejudice of the defendants' cross-appeal. As to the award of one hundred dollars, reimbursement for advance rentals, the judgment is likewise affirmed. As to the allowance for an attorney's fee in the superior court, the judgment is reduced from two hundred fifty to two hundred dollars.

The respondents, having prevailed on the major issues on this appeal, will recover their costs.

HAMLEY, C. J., SCHWELLENBACH, WEAVER, and ROSELLINI, JJ., concur.