[No. 28862. Department One. April 1, 1943.]

KENNETH SWENSSON et al., Appellants, v. THOMAS P. CARLTON et al., Respondents.[1]

Carl J. Smith, for appellants.

Padden & Moriarty and Melvin T. Swanson, for respondents.

[1]Reported in 135 P. (2d) 450.

JEFFERS, J.—This is an appeal by plaintiffs, Kenneth Swensson and Peter Swensson, copartners, from a judgment entered on June 11, 1942, after plaintiffs' motion for new trial had been denied.

Plaintiffs instituted this action against Thomas P. Carlton and wife and A. R. McDonnell, to recover an alleged balance due them for labor performed and materials furnished at the request of McDonnell, a contractor, in the construction of a dwelling for defendants Carlton. The complaint alleges in substance that, on or about July 10, 1941, at the instance and request of McDonnell, who was the contractor and agent of defendants Thomas Carlton and wife, plaintiffs were engaged to furnish material and labor in building and improving a dwelling house situated upon certain described property; that defendants Carlton and wife were and now are the owners of the land so improved; that the reasonable and agreed value of the labor performed was $605.79, and that there has been paid on that amount the sum of $26.21 for material and $173.79 for labor.

It is further alleged that the furnishing of labor and material ceased on October 16, 1941, and that, in order to secure payment for such labor and material, plaintiffs, on December 18, 1941, caused to be prepared and filed with the auditor of King county a notice of claim of lien; that no part of the balance of $458.21 has been paid, although demand therefor has been made. Plaintiffs then ask for judgment in the sum of $458.21, together with interest from October 16, 1941. It will be noticed that in the prayer plaintiffs do not ask for a foreclosure of their claimed lien.

Pursuant to a motion made by Carlton and wife for a bill of particulars, such a bill was furnished by plaintiffs. From this instrument it appears that plaintiffs began work on July 3, 1941, and thereafter worked on

July 7th, 8th, 9th, 10th, and 11th. They again began work on July 24th, and worked July 25th, 28th, 29th, 30th, 31st, August 1st, 4th, 5th, 7th, 8th, 11th, and October 11th. The balance due as shown by this bill of particulars is $464.62.

Carlton and wife answered, admitting the ownership of the property, their marital relationship; that defendant A. R. McDonnell was their contractor; and that McDonnell engaged plaintiffs to do some work on the premises; but denied the other allegations of the complaint. Defendant McDonnell defaulted.

The case was tried to the court. In view of the fact that, as shown by the memorandum opinion, the court decided the factual questions very largely on the testimony of Peter Swensson, we shall set out at some length his testimony. He testified that he was one of the plaintiffs, and knew defendants Thomas P. Carlton and A. R. McDonnell, and that he was a brick mason by trade. His testimony continues:

"Q. You had some business transactions with A. R. McDonnell? A. He ordered me to go to work on this particular job. Q. What business was he in? A. He was a contractor. . . . Q. What was the nature of your work? A. *Veneering a house and building two fireplaces.* Q. And you engaged in that work? A. Yes. Q. About July 3rd? A. Yes. Q. Who was working with you? A. My son Kenny. . . . Q. You may state what work you did at the request of Mr. McDonnell on this house and the time you put in. A. July 3rd, 7th, 8th, 9th, 10th, 11th. July 11th we put in ten hours. Otherwise, the other days we put in eight hours. . . . Q. The next work you did on that job was when? A. July 24th. . . . Q. Go on and tell us now. A. July 24th we put in eight hours; July 25th we put in eight hours; and July 28th. . . . and the 29th we put in eight hours and the 30th eight hours, and the 31st eight hours, and August 1st eight hours. That was the week. And then we started again on August 4th, eight hours; August 5th, four hours.

. . . A. August 7th, 8 hours; August 8th, eight hours; August 11th, eight hours. Then we came back and cleaned the living room, October 16th, two hours. . . . Q. You say you did this work at the request and behest of A. R. McDonnell, the defendant? A. Yes.

"Q. When you commenced working there July 3rd what was the work you started? A. The fireplace. . . . Q. How long did you work on the chimney and the fireplace? A. How many days? Q. How many of these days? A. *July 3rd to July 11th.* Q. Including July 11th? A. Yes. July 11th we worked ten hours. Q. What was the work you did on July 24th? A. *We started to veneer the house.* Q. And then the veneering was done on July 24th until what date? A. Until August 11th. Q. *And the veneering was finished then?* A. *Yes.* . . . Q. When did you first ask to be paid and whom did you ask? A. I asked McDonnell. Q. When was that? A. That was when we had the fireplace finished. Q. And that was when you received the $200.00 on account? A. Yes. Q. Did you ask him any other time for any money? A. I asked for money several times. . . . Q. Did you ask him at any time after August 11th? A. Yes. . . . Q. McDonnell left the job out there at about that time? A. I don't know, *because as soon as we was finished with our work we left the job.* Q. *That was August 11th?* A. *Yes.*

"Q. And you got tired calling McDonnell and called Mr. Carlton? A. We called Mr. Carlton several times previous, and Mr. Carlton gave us assurance he would see we got our money, otherwise we was ready to quit several times. . . . Q. Did you call on Mr. Carlton at his place of work? A. We went down and saw him at his place of work several times. Q. And when was that with respect to the date of August 11th? A. I couldn't say exactly the time. We was down there nearly every Saturday for quite a while. Q. You called on him about a week after the first time, did you not? A. Yes. The exact date I couldn't give, but I knew we was down there and saw him several times at his place of work. Q. And you were asking to be paid in full at that time? A. Yes. Q. *Did you tell him you had*

*finished your work?* A. *Yes.* Q. *Was it McDonnell that asked you to come out on October 16th to clean off the fireplace?* A. *Tom Carlton wanted us to do that.* Q. When was that? A. *That was a couple of days previous to October 16th,* and I told him we would go out the first chance we had. Q. That was when? A. A couple of days previous to October 16th. I said 'I will go out the first chance I have.' We went out on the—he told me where the key was so I could get in the house and we went out October 16th and cleaned it off. . . . Q. And he asked you to go out and do that? A. Yes, sir; *because the plasterer had daubed all over the fireplace the worst I ever saw.* . . .

"Q. What was the amount you claimed for work done on October 16th? A. $6.40. . . . Q. Do you know the name of the man that had the plastering contract? A. I just know him by sight. Q. Do you not see him in this courtroom? A. I don't know. Q. You don't recognize him? A. The plasterer sitting there. Q. Do you recognize him as the plasterer? A. Yes, sir. Q. Did you have any conversation with him or any of his men with respect to the fireplace and the plaster on the fireplace? A. Yes, sir. I told the plasterer it was the dirtiest thing I ever saw. Q. Did he say anything? A. He did tell his man to rectify it but he can't clean it that way. You have to burn it off by acid. Q. He said he would have his man clean it off? A. But he never did. Q. Was that all right with you? A. Yes, sir. . . . Q. *You told him you wouldn't clean it off because he had dirtied it?* . . . Q. *You told him you would not do it, did you not?* A. *Yes.* I told that to the plasterer. Q. And that was when your work was through, on August 11th, you were all through with it? A. *I was through until Mr. Carlton asked me to go out and clean the fireplace.* Q. But, as far as the work Mr. McDonnell asked you to do you were through on August 11th? A. Yes, sir. Q. And the work you did on October 16th was something Mr. Carlton asked you to do? A. *We did that for the purpose of extending the time so he had time to make arrangements to pay us.* Q. *And you extended the time for filing the lien?* A. *Yes.* That was the purpose of going out there to clean

the finish. There was no purpose of beating me out, but to extend the lien rights. . . . Q. And you were glad to do that because your lien right was running short? A. I told Tom we would file a lien if we didn't get it. . . . Q. My question was this, Mr. McDonnell hired you at first? A. Yes, sir. He hired us over the 'phone. Q. Did he tell you what your work was to be? A. *He told us to build two fireplaces and veneer the house. Q. Did he ever ask you to do anything else? A. No."* (Italics ours.)

Thomas Carlton denied that he ever asked plaintiffs to clean the fireplace, except once a few days after they had started to veneer the house, at which time they refused to do it. While plaintiffs testified it took them two hours to clean the fireplace, there is other testimony to the effect that the job could be done in fifteen minutes. Mr. Carlton denied that plaintiffs ever told him they would file a lien on the property if he did not pay them, and denied that he ever promised to pay plaintiffs. He also testified that he knew nothing about plaintiffs' cleaning the fireplace on October 16th, until he went home in the evening and saw that someone had been doing something to it. One of the plasterers also testified that Mr. Swensson told him that he would not clean the fireplace.

The trial court granted judgment in favor of plaintiffs and against defendant McDonnell, but held plaintiffs were not entitled to a lien on the premises, for the reason that the work plaintiffs were hired to do and for which their lien was filed was the work they were engaged to do by McDonnell, which work was completed on August 11, 1941; that the work done on October 16th was no part of the work they were hired by McDonnell to do, to secure which the lien was filed, and that the time for filing the lien was not extended by the work done on October 16th.

Plaintiffs have appealed from the judgment entered, and base their claim of error on the refusal of the court to enter a decree foreclosing appellants' lien against respondents' property; in denying appellants' motion for new trial; and in entering a judgment of dismissal as to respondents Carlton and wife.

While, as stated, appellants did not, in their complaint, ask for a foreclosure of their lien, the court proceeded on the theory that it was an action to foreclose the lien, and no objection was made thereto. The only assignment of error argued is in regard to the refusal of the trial court to allow appellants a lien against respondents' property, and we shall confine our discussion to that assignment.

It should first be noticed that appellants, in their complaint, ask for judgment for $458.21, after allowing a credit of two hundred dollars. In the lien filed on December 18, 1941, appellants also claim a balance due of $458.21, but, in the bill of particulars filed January 10, 1942, the balance claimed by appellants to be due is $464.62, or $6.41 more than claimed in the complaint or lien notice. It will also be noticed that appellants are claiming the sum of $6.40 for the two hours' work shown by the bill of particulars to have been done on October 11th, but which they testified was done on October 16th. As stated by the trial court, it would seem that, in so far as the items covered by the lien are concerned, they did not mathematically include the item of labor on October 16th. If the last work was done or materials furnished on August 11, 1941, it is apparent that the lien filed on December 18, 1941, was not filed in time.

Appellants claim that the trial court denied the lien on technical grounds, and that the court should have held the time for filing the lien notice was extended

by the work done on October 16th, at the request of Mr. Carlton, citing the following cases to sustain their contention: *Rieflin v. Grafton*, 63 Wash. 387, 115 Pac. 851; *Osten v. Curtis*, 133 Wash. 360, 233 Pac. 643; *Rose v. O'Reilly*, 138 Wash. 18, 244 Pac. 124; *American Plumbing & Steam Supply Co. v. Alavekiu*, 154 Wash. 436, 282 Pac. 917; *McIntyre v. Trautner*, 63 Cal. 429.

The principal distinctions between the above cited cases and the case at bar is that in the cited cases the last work done or materials furnished, which it was held extended the time for filing a lien, was done or furnished to complete the original contract or remedy some defect in the work done or materials furnished under the original contract. We call attention to one of appellants' quotations taken from the case of *McIntyre v. Trautner, supra:*

"Defendant cannot be heard to say that the additional work, done at his request *to complete the contract*, was not a continuation of the previous work, and done under the same contract." (Italics ours.)

■■ We think that in the instant case it must be admitted that all the work had been completed and materials furnished under the McDonnell contract on August 11, 1941. Mr. Swensson so admits. We are of the opinion that the work done on October 16th by appellants, in cleaning the fireplace because of the condition in which it had been left by the plasterer, was no part of the original contract.

We desire to call attention to the case of *American Plumbing & Steam Supply Co. v. Alavekiu, supra,* cited by appellants, wherein one Stacy, assignor of plaintiff, entered into a contract with the owner of the premises involved to install a heating and plumbing system. About the middle of March, 1927, both jobs were finished. The heating system proved unsatisfactory, and Mr. Stacy made several attempts to

remedy it. The property, in the meantime, had been leased to Mr. and Mrs. Irvine, who moved out of and abandoned the premises in May, 1927. During the succeeding month, Mr. Stacy, in an endeavor to remedy the defects in the heating system, delivered to the premises a new boiler, which was installed in August, Mr. Stacy making no charge for labor and material in connection with what he did, save a charge for material under date of August 29th, in the sum of $6.91, and one for material under date of September 8th. November 18th, Mr. Stacy filed his notice of claim of lien, in which it was stated that the performance of labor and furnishing of materials ceased on August 22, 1927. Defendants pleaded the work had been completed about March 15, 1927. The trial court refused to allow plaintiff a lien. This court, after referring to the other cases cited by appellants herein, stated:

"Following these decisions, we are of the opinion that, in the case at bar, the trial court erred in denying to plaintiff the right to foreclose its lien. It is evident that plaintiff's assignor [Stacy] continued in good faith to work upon the heating plant in an endeavor to place the same in such condition that it would do its work satisfactorily to the defendants. The claim of lien was filed within ninety days from the date plaintiff's assignor so ceased to work upon the heating plant, and consequently was filed in time, and should have been foreclosed."

It is a well-recognized principle of law that work done or materials furnished under a new and independent agreement, made after the original contract or continuing employment was ended, or a gratuitous performance of work not contracted for, does not set the time running so as to preserve a lien for the earlier work. *Peerless Unit Ventilation Co. v. D'Amore Const. Co.*, 283 Mass. 121, 186 N. E. 280; *Bohunek v. Smith*, 36 Ohio App. 146, 172 N. E. 852.

The agreement between appellants and Carlton, or the request by Carlton that appellants clean the fireplace, was entirely distinct from, and had nothing to do with, the work to be performed by appellants under the McDonnell contract, and cannot be tacked onto the original contract to extend the time for filing a lien for the labor performed and materials furnished under the original contract. *R. C. Mahon Co. v. Ford Motor Co.*, 256 Mich. 255, 239 N. W. 348. See 40 C. J. 200, § 237; also *Pacific Manufacturing Co. v. Brown*, 8 Wash. 347, 36 Pac. 273. In this connection, we find the following statement in 36 Am. Jur. 97, § 140:

"As a general rule, after a contract is completed and closed, the time for filing a statement or claim of lien cannot be extended or the right revived by furnishing material or performing labor, upon a new contract, and tacking the same to the original contract."

It will be remembered that Mr. Swensson testified that the McDonnell contract was finished August 11th, and he attempted to get the money due on the contract both from Mr. McDonnell and from Mr. Carlton. According to his testimony, it was not until a few days before October 16th that Mr. Carlton asked him if they would go out and clean the fireplace.

In this connection, we call attention to the case of *Brown v. Mychel Co.*, 186 Wash. 97, 56 P. (2d) 1020, wherein we held that small items of material and labor furnished for repairs subsequent to the completion of the original contract, such repairs being in no way an integral part of the original job, would not extend the time for filing a notice of claim of lien. In the course of the opinion, we stated:

"To permit the extension of the time for filing a lien, by the process of tacking on subsequent small, casual, and unrelated repairs, would create an intolerable condition not within the spirit or purpose of the lien law."

■ We are also of the opinion that the judgment of the court can be sustained by the rule announced in the case of *Petro Paint Mfg. Co. v. Taylor*, 147 Wash. 158, 265 Pac. 155.

Again we call attention to the fact that Peter Swensson testified that the original contract was completed on August 11th. Thereafter Mr. Swensson was asked:

"Q. And you extended the time for filing the lien? A. Yes. That was the purpose of going out there to clean the finish. There was no purpose of beating me out, but to extend the lien rights. Q. That was the reason you went there on the 16th? A. That is the reason Tom asked us to go out and clean the fireplace."

In the case last above cited, we stated:

"But the evidence and logical deductions from the evidence in this case show that the small items of materials furnished by appellant on July 6, although at the request of the owner, were not made for the purpose of fully completing the contract, but merely for the purpose of fixing a later date."

It is apparent in the instant case that the work done on October 16th was no part of the original contract, but was done for the purpose of attempting to extend the time for filing a lien for the work done and materials furnished under the original contract. We held in the cited case that this could not be done.

For the reasons herein assigned, the judgment of the trial court is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and ROBINSON, JJ., concur.