[No. 28883. Department One. April 9, 1943.]

BUILDING SUPPLIES, INC., *Respondent*, v. HUBERT B. GILLINGHAM *et al.*, *Appellants.*[1]

*M. E. Mack,* for appellants.

*Roy A. Redfield,* for respondent.

MALLERY, J.—Defendants appeal from a judgment in favor of the plaintiff on a lien foreclosure action, for

[1] Reported in 135 P. (2d) 832.

building material supplied to defendants upon the order of one Iverson, a contractor, on March 5th, 6th, 7th, 10th, 13th, 20th, 25th, 31st, April 8th, 16th, 17th, June 13th, 20th, 26th, and July 2, 1941, totaling $458.50, together with attorney's fees and costs.

The appellants assign the following as error:

"1. The Court erred in concluding that notice was *mailed* or given as provided by R. R. S. § 1133.

"2. The court erred in concluding that there was One (1) contract.

"3. The Court erred in allowing Two Dollars ($2.00) for preparation of lien.

"4. The Court erred in allowing Ten and 10/100 Dollars ($10.10) sales tax after plaintiff had requested it to be disallowed." (Italics ours.)

 First assignment: There was testimony on this point by C. A. Bartleson, who is president and manager of the respondent corporation. He described a detailed system by which he covers and keeps track of the mailing of owners' notices. He has a form book out of which the notices are taken for preparation in the particular case, and records kept. The notice used in this case was that numbered 223, and such notice was detached from the book and appears in evidence as exhibit 2. When such a notice is prepared for mailing, a certain rubber stamp is affixed to the first sales slip. Such sales slip, corresponding in date with the owner's notice, March 5, 1941, is in evidence here as exhibit 8.

He testified that he knew the owner's notice, being the original of exhibit 2, was mailed to Mr. Gillingham. He stated that the notice went forward with a letter enclosed in the same envelope to appellant on the date in question. Referring to the initial sales slip, this witness testified that he put the rubber stamp on it. The reference to A. G. Bergman within the square formed by the stamp is to the stenographer who posted

the notice and letter. He wrote these penciled figures and words inside the box formed by the stamp himself.

Explaining his system, he says that, when he makes out the notice, he puts the stamp on the sales slip, then makes a memorandum for his own desk for attention the next morning. He instructs the stenographer to mail the letter and the next day he follows up by asking that stenographer if the mailing has been completed. He is reminded to do this by the memorandum he puts on his own desk. This is his regular method for following up the mailing of an owner's notice. When on the day following mailing he verifies that the mailing has been completed, by asking the stenographer, he then posts in the name of the person who mailed it. This is a regular system always followed in the respondent's office. The final endorsement is put on after he has checked to make sure that the notice has gone out and the last thing written is the name of the person who did the mailing. He also testified that he had mailed only five notices during the year 1941.

Arlie Bergman, respondent's stenographer, testified as follows:

"Q. I am showing you two exhibits which have been received in this case, and they are numbered 2 and 3, and I am asking you a question which you can answer by yes or no; do you have any knowledge in regard to those documents? A. I do. Yes, I do. Q. Who takes care of the mail in your office, that is, posts the letters and so on? A. I do. Q. Do you know whether those documents were mailed? A. Yes, I do. Q. Do you remember doing it? A. Yes, I do. Q. What about prepayment of postage on the envelope? A. Our envelopes are all government envelopes, *the postage is already on, so that is taken care of.* Q. And at what time, if you remember, Miss Bergman, were they mailed with respect to the date they bear, the 5th of March? A. About 5:30. Q. You mean of that day? A. Of that day." (Italics ours.)

She further testified:

"When Mr. Bartleson writes out these notices, he always asks me if I will be sure to mail it and I always tell him I will and I take it to the post office. The minute I get in the office I make an envelope, and then, of course it goes with our regular mail to the post office. I take it."

Her further testimony may be thus summarized: She remembered sending this particular notice, and said that she made it a special point to mail it. She "knows the procedure in our office in a case like that." She knew the address, saying that, when Mr. Bartleson gave her the letter, he gave her the address. She goes on to say, "I know that I mailed it because it was a materialman's notice, and I always make it a point to mail them in any case."

The general statement of one that he "mailed" a letter to another is *prima facie* evidence that he did all of the things incident thereto. The cross-examination in this case failed to develop that any necessary step was omitted in the mailing of the notice. The statute is fully complied with when the materialman mails the notice to the owner. The risk of loss in the mail is on the owner. This assignment of error must fail.

Under his second assignment of error appellant contends that, on about March 1, 1941, he employed Iverson to do certain plastering on the outside walls of the building and a portion only of the inside. That this contract was completed on 26th of April, 1941. That, thereafter on June 13, 1941, he re-employed Iverson to plaster the inside of the balance of the building, which was completed about July 5, 1941. That the claim of lien was filed August 21, 1941, which is more than ninety days after the completion date of the first contract.

The trial court found that there was one contract, and thus resolved this question of fact against appellant. It is not contended by appellant that respondent had any notice of the existence of two distinct contracts.

It should also be noted that, if there were two contracts, they were between the same parties, for the same type of work, on the same structure, and that the time for filing a claim of lien had not run on the first before the second had begun. In *Valley Lbr. & Mfg. Co. v. Driessel*, 13 Idaho 662, 681, 93 Pac. 765, 771, it was said:

" . . . if the defendant seeks to defeat the right of recovery on the ground that there were two separate and distinct contracts, after showing their existence, he should be required to either show that the materialman had actual knowledge that two contracts existed, or else prove such facts and circumstances either by way of lapse of time, cessation of work, occupation of the building and premises by the owner, settlement of accounts, or other circumstances that would amount to constructive notice to the materialman and put him on his inquiry to ascertain that two contracts did in fact exist."

We think our own case of *Flint v. Bronson*, 197 Wash. 686, 86 P. (2d) 218, is controlling. This is a very clear case of two contracts, the second one having been made to provide for a slight change in the work already completed, by a new owner who had just bought the property. The alteration amounted to only $1.55. Separateness of the two contracts is beyond all question. The lien was filed within ninety days after the change, but altogether too late to save the items under the main contract if any distinction were to be observed. This assignment must also fail.

We find no merit in appellants' remaining assignments. Respondent conceded them in open

court during the trial. By inadvertence, the two dollar fee for preparing the claim of lien, and the ten dollars sales tax, were included in the judgment. This apparently escaped the notice of all concerned, including appellant, who indorsed on the bottom of the last page of the court's findings: "notice of presentation waived, and may be signed—5/23/42—M. E. Mack."

The judgment will be corrected according to the original intention of the parties. This slight correction, however, will not defeat respondent's right to its costs on appeal.

The judgment is affirmed as corrected.

SIMPSON, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.