[No. 30296. Department Two. December 1, 1947.]

STANDARD LUMBER COMPANY, *Respondent*, v. FLOYD F. FIELDS *et al.*, *Appellants.*[1]

[1]Reported in 187 P. (2d) 283.

*Paul F. Scharpenberg* and *Irwin & Kimball,* for appellants.

*S. R. Clegg* and *Lawrence Hickman,* for respondent.

JEFFERS, J.—This is an appeal by defendants, Floyd F. Fields and wife, from a judgment entered March 19, 1947, in favor of plaintiff, Standard Lumber Company, a corporation.

Plaintiff instituted this action against defendants to foreclose a lien for materials furnished by plaintiff for use in the construction of a grain elevator, bunkhouse, and shop, on land owned by defendants. It is alleged that defendant Floyd Fields, on a date unknown to plaintiff, entered into a contract with J. J. Berry, under the terms of which Berry was to construct and build, simultaneously, upon the southeast quarter of section 32, township 16 north, range 40, E.W.M., a grain elevator, bunkhouse, and shop; that thereafter, on or about June 27, 1945, plaintiff agreed to sell and deliver, upon Berry's order, building materials and supplies for use in the construction of such buildings upon the premises; that on or about June 27, 1945, plaintiff commenced to deliver the materials and supplies to Berry for the purpose aforesaid, and continued such deliveries from time to time, the last delivery being made on or about December 1, 1945.

It is further alleged that written notice of the delivery of materials was mailed to defendant Floyd Fields within five days after the first delivery; that the reasonable and agreed value of the materials furnished was $2,248.99, and according to the terms of sale, payment was to be made within thirty days of delivery; that there was paid on account $580.59, leaving a balance due of $1,677.90, including $9.50 interest.

It is further alleged that plaintiff, within ninety days after December 1, 1945, the date the last materials were

furnished, duly filed with the auditor of Whitman county its claim of lien.

Defendants demurred to the complaint on the ground that there was a defect or nonjoinder in parties defendant in not naming the contractor, J. J. Berry, as a party defendant. The demurrer was overruled. A motion made by defendants for a bill of particulars was granted, as modified. Plaintiff furnished a bill of particulars, which shows the approximate date of each delivery, description of materials, price, credits, and a balance due of $1,677.90. This bill of particulars covers some five pages, and shows the approximate date of the first delivery as June 27, 1945, and the last delivery being made on or about December 1, 1945.

Defendants answered the complaint, admitting the ownership of the property, the corporate existence of plaintiff, and that they entered into a contract with J. J. Berry, but denying that by the terms of the contract Berry was to construct the buildings simultaneously, and denying the other material allegations of the complaint. Defendants alleged affirmatively that they entered into two separate contracts with Berry, the first on or about June 23, 1945, for the construction of a grain elevator with flathouse and a bunkhouse, and the second on or about September 5, 1945, for the construction of a shop building.

It is further alleged that Berry ceased work on the elevator and bunkhouse on or about September 1, 1945, and that none of the materials were used in, or delivered for use in, such buildings after that date; that plaintiff's right to file a lien for materials used in the elevator and bunkhouse expired ninety days after September 1, 1945.

It is further alleged that the contract to construct the shop building was a separate and distinct contract from the contract to build the grain elevator, and that plaintiff did not give defendants notice that it would claim a lien against the shop building.

It is also alleged that, by reason of a conversation between M. C. Mink, plaintiff's agent, and defendant Floyd Fields, plaintiff waived its lien and is estopped from main-

taining this action; that all sales of materials made by plaintiffs after September 1, 1945, were illegal and void, because they were made without plaintiff requiring a priority therefor, although plaintiff knew that defendants' priority extended only to the grain elevator and not to the shop building, and that such priority expired September 1, 1945; also that such sales were made in violation of conservation order L-41.

Plaintiff, by its reply, admitted that J. J. Berry commenced building the shop building on or about September 5, 1945, but denied the other affirmative matter contained in defendants' answer.

As shown by the memorandum opinion filed by the trial court, which is made a part of the statement of facts, it was the theory of the court that, even though there were two separate contracts entered into between the owner and the contractor for the construction of the buildings, when the plaintiff, which is seeking to foreclose its lien, established the fact that it furnished the material to the contractor under one continuous contract with him, then, if defendants seek to defeat the right of foreclosure on the ground that there were two separate and distinct contracts, after showing their existence they must go further and either show that plaintiff had actual knowledge that two contracts existed or prove such facts and circumstances as would amount to constructive notice to the materialman and put it on inquiry to ascertain whether or not two contracts did, in fact, exist. The memorandum opinion states:

"In this case the furnishing of the materials was continuous and there are no such circumstances as would tend to show that the plaintiff had notice of the completion of the original contract, and that another contract had been entered into between the owner and the builder. The burden so to do was on the defendants. They have not sustained the burden of proving such knowledge. The plaintiff last furnished materials on December 1, 1945, and thereafter the claim of lien was timely filed in the office of the county auditor on February 15, 1946."

The court concluded that plaintiff was entitled to a decree against defendants foreclosing its lien upon the prem-

ises for $1,672.50, together with interest and an attorney's fee of $250. A decree to that effect was entered March 19, 1947, and this appeal by defendants followed.

It is assigned that the court erred (1) in holding that, where there is a second contract for a new building entered into upon completion of the first contract, the owner has the burden of proving in addition that the materialman had actual or constructive notice of the two contracts where the account was continuous; (2) in holding that the owner had not sustained that burden; (3) in holding that it was only necessary for the materialman to establish that it furnished the material to the contractor under one continuous contract with the contractor, and that the lien was filed within the statutory time after furnishing the material; (4) in overruling appellants' motion to dismiss the action at the close of plaintiff's case or to strike the items not proved; (5) in foreclosing the lien on one hundred sixty acres without either allegation or proof that that amount was necessary to the lien; (6) in refusing to hold that the sales in contravention of conservation order L-41 were illegal and void and in refusing to admit conservation order L-41 in evidence; (7) in including nonlienable items in the lien; (8) in denying appellants' motion to make the contractor a party to the action; (9) in holding that the materialman was not estopped to assert its lien; and (10) in entering judgment for the respondent.

The pertinent facts may be stated as follows: Respondent is a Washington corporation, having its principal place of business in Spokane, Washington. It owns and operates a lumber yard in Colfax, Washington. Appellants are husband and wife, and own the one-hundred-sixty-acre farm upon which the buildings with which we are here concerned are located.

In June, 1945, appellants entered into an oral contract with J. J. Berry for the construction of a grain elevator, flathouse, and bunkhouse, for the sum of $6,935.60, with a provision for additional charges for extra material not included in the original contract. The construction of a shop

building was discussed at that time, but any agreement as to the construction of the shop building was held in abeyance pending a more definite determination of the size of the shop. Appellants secured a government priority to build the grain elevator, which priority expired September 1, 1945.

Upon the order of the contractor, Berry, respondent commenced supplying building material to the Fields job on June 27, 1945, and continued furnishing material to the job at frequent intervals on the order of the contractor until December 1, 1945.

Respondent gave due notice to appellants, within five days after the first delivery of material, in accordance with the provisions of Rem. Rev. Stat, § 1133 [P.P.C. § 180-3], and it is not denied that such a notice was given.

Mr. Hiatt, traveling auditor for respondent, testified at length relative to the way sales of material were made by respondent, and the manner in which its records of sales were made and kept. All sales made on order of contractor Berry for the Fields job were written up on a sales ticket, in quadruplicate, with Berry named as the person "sold to," and for "address" the words "Fields job" or "Field job" were used. All sales and credits to contractor Berry on the Fields job were carried on respondent's ledger as one continuous account, under the name of "J. J. Berry," address "Floyd Fields job."

Work on the bunkhouse, according to Mr. Fields, ceased in August, 1945, because of the fact that a brick mason could not be obtained.

Mr. Fields stated that the last of August, 1945, he entered into a second oral agreement with Berry for the construction of a shop building, which was to cost $3,090. There is evidence that in the early part of August, Berry ordered material in contemplation of the construction of the shop building.

The bunkhouse was about one hundred feet from the elevator pit shed, and the shop building about forty feet

beyond the bunkhouse, so these buildings were all within about one hundred forty feet of each other.

Fields began to store grain in the elevator the last week in August. The elevator was completed, except for some minor detail work, at the time Berry commenced constructing the shop building on September 5, 1945. Apparently on September 4th, when Mr. Fields picked up some corrugated roofing at respondent's yard, he told Mr. Mink, respondent's manager, that the elevator was finished and had wheat in it.

As the work progressed, Berry submitted to Mr. Fields "contract statements" on July 15, 1945, August 17, 1945, September 5, 1945, and September 20, 1945. These statements show the total amount of the contract as of the above dates, additions to the contract, and deductions or credits on the contract.

The contract statement of September 5th lists the shop building as an addition to the original contract, amounting to $3,090. Mr. Berry treated the agreement to build the shop building as a "change order," as a part of a running agreement, as merely an addition to the original contract, and not as a separate, independent contract.

Appellants paid Berry, by check, the following sums as the work progressed: July 5th, $1,000; July 17th, $1,290.90; July 31st, $1,000; August 22nd, $1,032.80; September 8th, $705.05; September 30th, $500; October 6th, $1,278.50; November 26th, $500; and December 3rd, $737.58.

Respondent, on February 15, 1946, filed with the auditor of Whitman county its claim of lien for materials furnished and to be used in the grain elevator, bunkhouse, and shop building upon the property in question. The only sales made within ninety days immediately preceding that date were those made on November 28 and December 1, 1945. The testimony is in conflict as to whether or not the materials furnished on the dates last mentioned were actually used in the buildings.

The testimony is also in conflict as to whether or not Mr. Mink, on or about January 25, 1946, asked appellant

Fields not to try to collect from Berry, or restrain him from removing materials stored at the job, on the assurance that respondent would collect from Berry.

We are of the opinion the following question is raised by the first assignment of error: When respondent materialman, in seeking to foreclose its lien, establishes the fact that it furnished the materials to the contractor under one agreement with him, and appellant owner seeks to defeat the lien by showing that the materials were furnished on two separate and distinct contracts entered into between the contractor and the owner, and that the lien was not filed in time to secure the claim for materials furnished on the first contract, and fails as to the second contract because notice of delivery was not given, as required by the statute, does appellant owner have the additional burden of showing that the materialman had actual or constructive notice of the two contracts?

The liens given to mechanics and materialmen being purely creatures of statute, the operation and extent of the act must be ascertained from its terms.

Rem. Rev. Stat., § 1129 [P.P.C. § 180-1], provides who may have such a lien:

"Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, dyke, flume, tunnel, well, fence, machinery, railroad, street railway, wagon road, aqueduct to create hydraulic power or any other structure or who performs labor in any mine or mining claim or stone quarry, has a lien upon the same for the labor performed or material furnished by each, respectively, whether performed or furnished at the instance of the owner of the property subject to the lien or *his agent; and every contractor, subcontractor, architect, builder or person having charge of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter* . . ." (Italics ours.)

Rem. Rev. Stat., § 1133, provides the necessary prerequisites for obtaining a lien, among which is a notice to the

owner of the property, not later than five days after the first delivery of materials to any contractor or agent, that such claimant has commenced to deliver materials and supplies for use therein, etc.

Rem. Rev. Stat., § 1134 [P.P.C. § 180-11], provides for the filing of a claim of lien within ninety days from the date of the cessation of the performance of such labor or of the furnishing of such materials, and the form of such claim.

Rem. Rev. Stat., § 1147 [P.P.C. § 180-37], provides:

"The provisions of law relating to liens created by this chapter, and all proceedings thereunder, shall be liberally construed with a view to effect their objects."

In construing the above section, we stated in *Westinghouse Electric Supply Co. v. Hawthorne*, 21 Wn. (2d) 74, 77, 150 P. (2d) 55:

"This section should not be considered in determining the question of whether or not a particular claim of lien is enforcible as such."

In the case of *DeGooyer v. Northwest Trust & State Bank*, 130 Wash. 652, 228 Pac. 835, we said:

"Statutes creating liens are in derogation of the common law and are to receive a strict construction. *Tsutakawa v. Kumamoto*, 53 Wash. 231, 101 Pac. 869, 102 Pac. 766. Their operation will not be extended for the benefit of those who do not clearly come within the terms of the act. It is true that § 1209, Rem. Comp. Stat. [P. C. § 9665b], provides that the lien laws shall be liberally construed with the view to effecting their object. This means that when it has been determined that persons come within the operation of the act it will be liberally applied to them."

Appellants contend that the following statement found in 40 C. J. 279, § 348, is the general rule, and is applicable in the instant case:

"Where labor or material is furnished under an entire contract upon separate buildings owned by the same person and situated upon the same lot or tract, the lien attaches upon the whole property for the whole value of the labor or material; *but the rule is otherwise where there are separate contracts*." (Italics ours.)

However, we might call attention to pp. 178, 179, § 209, of the same volume, where the following statement is made:

"Under some statutes, where several buildings or structures are erected on the same lot or tract of land, a single claim of lien may be filed covering all the property and including all the items, whether the work was done or the materials furnished under one general contract or under separate contracts."

In support of the above-stated general rule, appellants cite *Erickson v. Perica,* 113 Wash. 510, 194 Pac. 963; *Hoagland v. Magarrell,* 115 Wash. 259, 197 Pac. 20; *Brown v. Mychel Co.,* 186 Wash. 97, 56 P. (2d) 1020; and *Swensson v. Carlton,* 17 Wn. (2d) 396, 135 P. (2d) 450.

It seems to us the following quotation from the *Hoagland* case, *supra,* set out in appellants' brief, is sufficient in itself to distinguish it from the instant case:

"Where one contract is made for the construction of, or for work upon, several different buildings located on *as many different lots or tracts of land,* for a lump sum, one lien may be filed for the total sum and foreclosed as against all of the lots and the improvements thereon; but where, as here, the contract is that various buildings will be constructed on various lots or work done on various buildings, at a designated and fixed price per building, then each lot should be liable only for the value or contract price of the improvement on it." (Italics ours.)

In the cited case, while the work was in progress, or shortly afterwards, the defendant Webster became the owner of all the lots, except one, upon which a lien was claimed. In the instant case, no third party has an interest in the buildings or the land; the land consists of one tract; there was no showing that the land could be segregated as to each building; and the action is between the materialman and the owner.

There is nothing stated in *Erickson v. Perica, Brown v. Mychel Co.,* and *Swensson v. Carlton, supra,* which, when the facts and the questions presented therein are considered, would require a different holding in the instant case than that reached by the trial court. It might be stated further that in the *Brown* and *Swensson* cases, *supra,* the lien

claimant knew that there were two contracts, while in the instant case the record fails to show that respondent had such knowledge.

The trial court cited the case of *Valley Lbr. & Mfg. Co. v. Driessel,* 13 Idaho 662, 93 Pac. 765, 15 L. R. A. (N.S.) 299, to sustain its conclusion that where the owner seeks to defeat a lien by claiming there were two contracts, the burden is upon him to show that the materialman had actual notice of that fact, or else prove such facts and circumstances as would amount to constructive notice to the materialman and put him on inquiry to ascertain that two contracts did in fact exist.

The case last referred to is cited with approval in *Building Supplies v. Gillingham,* 17 Wn. (2d) 489, 493, 135 P. (2d) 832. In the last-cited case, appellant Gillingham contended that about March 1, 1941, he employed one Iverson to do certain plastering on the outside walls of a building and a portion only of the inside; that the contract was completed on April 26, 1941; and that thereafter he employed Iverson to plaster the balance of the inside of the building, which was completed about July 5, 1941. The claim of lien was filed August 21, 1941, which was more than ninety days after the completion date of the first contract. The trial court found that there was one contract. However, it was not contended by appellant that the respondent had any notice of the existence of two distinct contracts. We stated:

"It should also be noted that, if there were two contracts, they were between the same parties, for the same type of work, on the same structure, and that the time for filing a claim of lien had not run on the first before the second had begun."

We then quoted from the *Driessel* case, *supra,* as follows:

" 'If the defendant seeks to defeat the right of recovery on the ground that there were two separate and distinct contracts, after showing their existence, he should be required to either show that the materialman had actual knowledge that two contracts existed, or else prove such facts and circumstances either by way of lapse of time, cessation of work, occupation of the building and premises by the owner, settlement of accounts, or other circumstances

that would amount to constructive notice to the material-man and put him on his inquiry to ascertain that two contracts did in fact exist.' "

In the instant case, the two contracts were between the same parties, for the same type of work, and the time for filing a claim of lien had not run on the first before work was begun on the second, but the contracts did not cover the same structure, the first contract covering the construction of a grain elevator with a flathouse and pit shed attached, and a bunkhouse, and the second contract covering the construction of a shop building.

Appellants seem to contend that the result in the *Driessel* case, *supra,* would have been different if there had been more than one building. This presents the question of whether or not the rule of the *Driessel* case, as announced in the *Gillingham* case, is inapplicable here, because there are three buildings on one tract of land, instead of one. In other words, are three buildings constructive notice to the materialman that there is more than one contract?

As shown by the testimony of the contractor, Berry, these buildings were located on the Fields farm, and were all within one hundred forty feet of each other. Respondent's sale yard in Colfax was about thirty-five miles from this farm. We are of the opinion that, under the facts in this case, neither the sequence in ordering materials nor the fact that three buildings were constructed supports appellants' contention that the circumstances were such as to put respondent on inquiry to determine whether or not there was more than one contract between the contractor and the owner.

The reasons for placing the burden upon the owner to show that the materialman had either actual or constructive notice that the material was used on two separate contracts are founded upon the purpose and objects of the statute, and are quite fully stated in 40 C. J. 44, § 5.

We are of the opinion that when the materialman has established, as it did in this case, that it furnished the materials to the contractor under one continuous agreement, gave notice to the owner after the first delivery, as re-

quired by statute, and filed its lien within the statutory period after the last delivery, the object and purpose of the statute would be defeated by allowing the owner to destroy the lien by showing that there were two contracts between the owner and the contractor, without further requiring the owner to show that the materialman had actual or constructive notice of the two contracts.

Appellants contend that the materialman should be required to use reasonable diligence in lien cases, and we may grant such contention, but we are unable to agree that there are any facts in this case tending to show that the materialman did not use reasonable diligence.

It seems to us that where, as in this case, a group of buildings were constructed on a single tract, for a common purpose, thirty-five miles from the materialman's nearest place of business, to say that because there were three buildings constructed, such fact should be sufficient to put the materialman on notice that there was more than one contract, would be to require the materialman to exercise more than reasonable diligence, and to place upon him a hardship never contemplated by the statute. We think the rule announced in the *Driessel* case, *supra,* is applicable here.

The trial court concluded that appellants had not sustained the burden of proving that respondent had actual or constructive notice of the two contracts, and we are in accord with such conclusion. The deliveries were made at frequent intervals, and the materials were all of the same general nature, namely, building materials. While the court was of the opinion there were, in fact, two contracts entered into between the owners and the contractor, the entire matter was handled as one job. As shown by the statements rendered by the contractor to the owners, the contractor treated the entire undertaking as one job. There were nine payments made by appellants to Berry, the contractor. There is no evidence that they were made on the basis of two separate contracts. They seem to have been made on a work progress basis. Although appellants had notice that respondent had commenced supplying to the contractor materials for which a lien could be claimed, there

is no testimony to the effect that appellants made any inquiry as to whether respondent was being paid until after appellants had paid Berry in full.

Appellants' attorney, prior to the institution of this action, apparently treated the matter as involving one contract, for on February 20, 1946, he wrote to respondent, a portion of his letter reading as follows:

"You are further requested and notified to immediately commence proceedings to collect the account due from Berry to you for materials which you claim were used on the premises of Floyd F. Fields."

Counsel for appellants wrote another letter to respondent on February 27, 1946, from which we quote: "To date Mr. Berry has not completed the job for Mr. Fields as he had agreed to do."

We conclude that appellants' first and second assignments of error are not well taken.

Appellants' third and fourth assignments of error involve the furnishing and use of materials for which the lien is claimed. They contend that the court erred in holding that it was only necessary for the materialman to establish that it furnished the materials to the contractor under one continuous contract, and that the claim of lien was filed within the statutory time after furnishing such materials; that the court erred in denying appellants' motion to dismiss the action at the close of plaintiff's case, or to strike the items not proved.

It seems to be appellants' contention that the trial court's theory of the case as regards delivery and use was that the mere furnishing of the materials to the contractor was sufficient to sustain the lien foreclosure. Appellants contend that it is the law of this state that the mere furnishing of materials to the contractor is not sufficient, but that, in order to maintain a materialman's lien, it is necessary that he prove one of the following:

"(1) That the materials furnished were specifically designed for use in the building against which the lien is sought to be foreclosed; or

"(2) That the materials furnished were actually used in the said building; or

"(3) That the materials furnished were delivered to the premises, *by the materialman* for use in the said building." (Italics ours.)

We find nothing in the memorandum decision of the trial court to support the contention that it was the theory of the court that the mere furnishing of materials to the contractor was sufficient.

We are not concerned with the first rule above stated, as there is no claim that the materials here in question were specifically designed for use in the buildings here constructed. A materialman can establish his right to a lien by proving that the materials furnished were actually used in the building. The third ground on which a materialman can establish his right to a lien, appellant contends, is by proving that the materials furnished "were delivered to the premises by the *materialman* for use in the said building." (Italics ours.)

Respondent contends that it is sufficient if the materials are sold to the contractor and in some manner delivered to the premises for use thereon, whether such delivery be by the materialman, contractor, owner, or a third party volunteer.

In the early case of *Fuller & Co. v. Ryan,* 44 Wash. 385, 87 Pac. 485, we stated:

"The reason for allowing a lien to secure the purchase price of building material would seem to be absent where such material was neither used in the building nor taken to the premises for that purpose."

Nothing is said in regard to who must make the delivery.

The case of *Gate City Lbr. Co. v. Montesano,* 60 Wash. 586, 111 Pac. 799, cited by appellants, does not state that physical delivery of the material to the job must be made by the materialman.

The case of *Western Hardware & Metal Co. v. Maryland Cas. Co.,* 105 Wash. 54, 177 Pac. 703, 181 Pac. 700, in discussing the *Montesano* case, *supra,* states:

"The claimed delivery consisted only of the lumber company placing the lumber upon cars at a railroad station for shipment, some distance from the place where the work was being carried on. Thereafter a large part of the lumber was diverted and not used in the structure at all. This, it was held, was not such a delivery at or near the place where the lumber was to be used as to give the lumber company a right of action upon the bond."

In *Holly-Mason Hardware Co. v. National Surety Co.,* 107 Wash. 74, 180 Pac. 901, we stated:

"The bondsman manifestly did not become surety for all materials the contractor might purchase during the time he is actually at work upon the contract, regardless of the use made of the materials. But, since he may not be able to show that the materials furnished actually went into the structure, he is allowed the more liberal rule of showing that he delivered the material on the ground for use therein. This rule, as was said in the case cited [*Foster v. Dohle,* 17 Neb. 631, 24 N. W. 208], is sufficient for the protection of *bona fide materialmen,* while a more liberal rule might lead to the grossest of frauds."

The paragraph last above set out is quoted in the case of *Westinghouse Electric Supply Co. v. Hawthorne,* 21 Wn. (2d) 74, 150 P. (2d) 55, following this statement:

"A portion of the wire furnished was stored for future use as needed, but this does not prevent appellant from claiming a lien therefor. Materials which are delivered in good faith by a materialman, to be incorporated into a building, are lienable, and the fact that they have not been used for the purpose for which ordered will not defeat the claim."

The *Holly-Mason Co.* case, *supra,* is also cited in *Thompson v. O'Leary,* 176 Wash. 606, 30 P. (2d) 661.

The rule contended for by appellants, that the delivery on the ground for use in the building must be made by the materialman, finds its support, if it has any, in the case of *Holly-Mason Co. v. National Surety Co., supra.* The rule announced in that case is apparently based upon a quotation from the case of *Foster v. Dohle,* 17 Neb. 631, 24 N. W. 208, as set out in the case of *Gate City Lbr. Co. v. Montesano, supra.*

 We do not believe that the *Foster* case, *supra*, holds that the materials must be personally delivered on the ground by the materialman, nor do we think it was ever the intention of this court to so hold. We are of the opinion that what this court has held is that the burden is on the materialman to show that the materials claimed to have been furnished by him either actually went into the building or buildings for which they were furnished, or that the materials were actually delivered upon the ground for use in such building or buildings; that it is immaterial what agency performed the physical act of delivery.

We are in accord with the following rule announced in *Western Hardware & Metal Co. v. Maryland Cas. Co., supra*:

"The question of whether a delivery of material to a contractor or subcontractor is such as to entitle the one so furnishing it to recover upon the bond if the work be public, or to a lien if the work be private, is not one which can be determined by a hard and fast rule applicable to all cases."

 The only sales made by respondent within the ninety day filing period were on November 28, 1945, written up on sales ticket No. 01515, as two 2 x4—14, and on December 1, 1945, sales ticket No. 01629 for two inside locks, one set 4 x 4 half surfaced hinges, one set 3½ x 3½ half surfaced hinges, one door stop, one door rollers, one door guide, 16 lin. ft. ⅝ x 2½ apron.

We see no benefit in setting out the testimony relative to the above items, other than to say that contractor Berry testified that the articles were delivered to the job for use in the buildings being constructed. A carpenter named Kammers testified to the use of some of the articles included in sales ticket No. 01515, and another carpenter, Mr. Hagard, testified to the use of some of the items on ticket No. 01629. Mr. Fields and his son, Floyd, Jr., testified to the effect that such items were not used on the job.

We think the following statement found in 2 Jones on Liens (3d ed.) 557, § 1329, is applicable here:

"In most of the states, however, the actual use of the materials is not requisite if they were furnished for a particular building or improvement. 'To require direct and

positive testimony,' said Brewer, J., 'that as to each specific article delivered, that it was in fact used in the building, would make the mechanics' lien law more of a burden and a trap than a blessing and help. When materials are contracted for use in a proposed building, when they are delivered in pursuance of such contract, and when the building is in fact completed, and there is no testimony tending to raise even a suspicion that the materials therefor were elsewhere obtained, or that those contracted for were not used therein, and especially when some of the materials are shown to have actually entered into its construction, it is fair to conclude and say that such materials did in fact go into the building, and that the seller has a mechanic's lien therefor.' "

Appellants claim there were a number of other items charged to J. J. Berry-Fields Job, in regard to which use or delivery was not sufficiently proved by respondent.

We may say generally, as to the items upon which the claim of lien is based, that they were all evidenced by sales tickets signed by contractor Berry, or in a few instances by one of his employees at his direction, and Berry stated that the items were either picked up and brought, or delivered, to the Fields job, and there used. In some instances there was some material left over.

The sales tickets and ledger entries of respondent are entitled to considerable weight. We stated in *Pacific Lbr. & Tbr. Co. v. Dailey*, 60 Wash. 566, 111 Pac. 869:

"The receipt [receipted bill for materials delivered] is fair upon its face, the signature of the contractor is admitted, and the appellant would have had no motive in post-dating the bill. At the time of the delivery of this item it had ample time for the filing of the notice of lien. We think the receipt speaks the truth, and that it, with the explanation of the appellant's delivery clerk, must be held to meet the burden which the law throws upon the party having the affirmative."

The above case involved the foreclosure of a material- man's lien, and the above statement was made in determining the delivery date of lumber to the premises.

We are of the opinion the court did not err in denying appellants' motion to dismiss the action at the close of

plaintiff's case, nor, in our opinion, did it err in concluding that the evidence sufficiently showed a delivery to the premises or use in the buildings of the materials for which a lien is claimed.

■ It is next contended that the court erred in permitting the lien to be foreclosed on the entire one hundred sixty acres upon which the buildings are situated, without either an allegation in the pleadings or proof that that amount was necessary to satisfy the lien.

Rem. Rev. Stat., § 1130 [P.P.C. § 180-5], provides:

"The lot, tract or parcel of land upon which the improvement is made or the property is situated, subject to the lien created by section 1129, supra, or so much thereof as may be necessary to satisfy the lien and the judgment thereon, to be determined by the court on rendering judgment in a foreclosure of the lien, is also subject to the lien to the extent of the interest of the person or company, who in his or its own behalf, or who, through any of the persons designated in section 1129 to be agent of the owner or owners caused the performance of the labor, or the construction, alteration or repair of the property."

There was no allegation in the complaint as to the amount of land necessary to satisfy the lien. The question was first raised by appellants at the time of signing the decree.

In the instant case, one tract of land is involved, namely, the one-hundred-sixty-acre farm. Appellants state in their brief that this question was settled in *Dietz v. Bartell,* 120 Wash. 443, 207 Pac. 663, and quote from the cited case as follows:

"Plaintiff failed, however, to fully sustain his case by introducing the proof to show this land or what part of it was necessary for the building, and he also failed to prove what amount of ground was necessary to satisfy the lien and judgment, as required by § 1130, Remington's Comp. Stat. The requirement we have first mentioned does not seem to be covered any longer by statute, but though the statute fails to so prescribe, we think it is a matter of substantive law on the subject of mechanics' liens. Numerous authorities are cited in the note to *Wirsing v. Pennsylvania Hotel & Sanitarium* Co., 226 Pa. 234, 75 Atl. 259, 26 L. R. A. (N.S.) 831."

Let us examine briefly the facts in the *Dietz* case. The claim of lien was filed by a laborer. In this claim of lien which was filed, the property upon which the building was located was described as being in three different sections. The trial court gave plaintiff a personal judgment against the defendant owner, but refused to sustain any lien, for the reason that no proof had been offered showing that the several pieces of ground were all a part of one tract. The trial court filed a memorandum decision, and thereafter plaintiff, claimant, filed a motion asking that he be permitted to reopen the case, and that he be permitted to establish the fact that the tracts of land referred to in the complaint were contiguous and constituted one tract comprising a small farm under one enclosure, and that the building in question was the farm house located thereon. The court denied this motion. The opinion states:

"We think the court erred in holding that this case was governed by *Farrington v. Bushnell,* 88 Wash. 155, 152 Pac. 991. In that case the tracts of ground were non-contiguous and there was no proof showing they were operated as one property, or upon which tract the building was situate. In this case we can take judicial knowledge of the fact that the tracts described are contiguous."

Then follows the statement first above quoted from the *Dietz* case.

The *Farrington* case, referred to in the *Dietz* case, is cited by appellants in the instant case.

It will be noted that the *Dietz* case involved more than one tract of land. It will also be noted that we ordered the case to be reopened to permit the claimant to show that the three tracts were contiguous and constituted one tract comprising a small farm, and that the building in question was the farm house located thereon. We also ordered that if such facts were established, the trial court should enter such a decree of foreclosure as the proof warranted for the entire amount of the claim.

The instant case involved but one tract of land, upon which all the buildings in question were located.

On p. 837 of the note to *Wirsing v. Pennsylvania Hotel & Sanitarium Co.,* 226 Pa. 234, 75 Atl. 259, 26 L. R. A. (N.S.) 831, cited in the *Dietz* case, *supra,* we find, under the heading, "Statutes giving lien on 'lot' or 'tract,' " the following statement:

"The prima facie right to a lien on the whole lot upon which the building is erected is not affected by proof that there is another building on the lot. *Bergsma v. Dewey,* 46 Minn. 357, 49 N. W. 57."

On p. 838, under the heading "Statute expressly giving lien on land necessary for use of improvement," it is stated:

"A finding in the words of the complaint upon which no issue was raised, that all of the lot upon which the house was erected was necessary to the 'convenient use and enjoyment' thereof, will be construed to mean 'convenient use and occupation.' Besides, in the absence of evidence as to the size of the lot, it will be presumed, in support of the judgment, that the whole of it is necessary for the convenient use and occupation of the house. *Ward v. Crane,* 118 Cal. 676, 50 Pac. 839.

"Such presumption will arise in the absence of pleading and proof of the contrary, *when the complaint describes the land by legal subdivisions, and avers that the buildings were erected thereon. Seely v. Neill,* 37 Colo. 198, 86 Pac. 334." (Italics ours.)

On p. 839, it is stated:

"Wherever a barn is necessary for the enjoyment of a farm, the farm is equally necessary for the useful purposes of the barn, and a lien for the construction of a commodious barn capable of housing sixteen head of horned cattle and six horses, upon a farm of 58 acres, extends to the whole farm. *Wismer's Estate,* 2 Pa. Co. Ct. 387."

We find in 2 Jones on Liens (3d ed.) 593, § 1368, the following statement relative to the erection of farm buildings:

"A lien for erecting farm buildings upon a farm containing three hundred and fifty acres may be enforced against the whole farm. The question of the extent of the lien is the same in principle whether the farm be a large or a small one. 'The farm is a unit; its component parts are land and buildings. In common language, we say that the buildings are on the farm; that is, that they stand on the land. It is not a

strained or unnatural use of language to say that the farm is the land on which the buildings stand. Thus the whole farm may be literally within the terms of the statute.' [*Lindsay v. Gunning,* 59 Conn. 296, 22 Atl. 310, 11 L. R. A. 553.]"

It is stated in § 1369, p. 593, of the same text:

"The land covered by a lien is generally the whole lot of land belonging to the owner on which the building is erected, unless the amount of land is restricted or defined by statute. The court will not restrict the lien to the buildings and the land covered by them; and if they limit the lien to a less quantity of land than the whole lot, they will embrace in the lien also the land about the buildings used with them, and necessary, or reasonably convenient, for their use.

"Under a statute which provides that the lien shall cover the lot of land on which the building is situated, the whole of the land on which a mill is located is subject to a lien for work done in repairing a boiler in the mill.

"It is not necessary for the lien claimant to show that the quantity of land on which the lien is claimed is within the statutory limit; if the defendant claims that it exceeds that limit, he must show it, and it is then for the court to carve out the portion to which the lien shall attach."

While, as stated by respondent in its brief, there was no testimony in direct words that the one-hundred-sixty-acre tract was all a part of one farm, and that the buildings erected were used or to be used as part of that farm, those facts are readily apparent from all the testimony and the logical inference to be drawn therefrom. The land is described as the southeast quarter of section 32, township 16 north, range 40 E. W. M., in Whitman county. The various witnesses referred to the property as "the Fields ranch," "the farm," "the place," "the ranch," "father's ranch," and "father's premises." The testimony shows that the bunkhouse was for the harvest hands to live in. The elevator was to have a capacity of about seven thousand bushels. The flathouse was used to store seed wheat. These buildings were all constructed in close proximity to the other farm buildings on the Fields ranch. There is no question but that all the buildings are located on the land described above, and we think it reasonably appears that all the buildings were

constructed for use in the operation of the farm as a unit, and that the entire one hundred sixty acres is necessary to a reasonable use of such buildings. In other words, the usefulness of these buildings is bound up with the occupation and use of the Fields farm. There is no testimony that these buildings have any value or any possible use aside from their use as a part of the ranch.

After an examination of the *Dietz* case, *supra,* the authorities cited in the note to *Wirsing v. Pennsylvania Hotel & Sanitarium Co., supra,* and the other cases cited by appellants, we are of the opinion that the rule announced in the *Dietz* case is not applicable to the facts in the instant case.

We conclude that the court did not err in deciding that respondent had a good and valid lien upon the southeast quarter of section 32.

 Appellants next contend that the court erred in refusing to hold that the sales made in contravention of conservation order L-41 were illegal and void, and in refusing to admit such order in evidence. Specifically, appellants contend that all sales made by respondent after September 1, 1945, were in violation of conservation order L-41, and therefore were illegal and void. This order was offered by appellants as exhibit No. 8 for identification, and while its admission was refused, it is in the record and has been examined by us.

The trial court seems to have based its conclusion that this order was not admissible and did not affect the sales made, upon the theory that no agency of the Federal government is here complaining of any failure to obtain a priority to construct the building in question (shop building). However, there is another and, to our mind, all-conclusive reason why this order has no application to the building constructed after September 1, 1945.

The building (shop building) with which we are here concerned is a farm building other than a farm house. Order L-41 as amended September 7, 1945, sets out under paragraph (d) (1) a list of construction jobs done as a unit which do not require permission from the war production board to construct. This provision limits the amount which may be expended in such construction. Subdivision (viii)

of paragraph (d) (1) provides: "$1,000 for any other kind of unit." It is possible that the provision last above quoted, when considered in connection with the definition of "unit" following, might include such a building as the shop building in the instant case, were it not for the exceptions contained in paragraph (e) of the order, which states:

"(e) *Exceptions for special kinds of construction.* It is not necessary to get War Production Board permission under this order for the following kinds of construction and the cost of such construction need not be charged against the annual limits stated in paragraph (d): . . .

"(7) Construction on farms, excluding farmhouses (which are covered by paragraph (d) (1) (i))."

Paragraph (d) (1) (i) provides that certain types of houses may be constructed, but limits the costs of such contracts.

The shop building is the only building appellants contend was constructed after September 1, 1945. We are of the opinion that conservation order L-41 does not apply to the farm building here involved, and that the trial court properly held that sales made after September 1, 1945, were not illegal or void because of such order.

It is next contended that the court erred in including nonlienable items in the lien. The first item objected to is a charge of interest in the amount of $9.50. In the instant case, the terms of sale to the contractor were that the materials were to be paid for within thirty days of delivery. The $9.50 item is interest charged upon the unpaid balance accruing prior to the filing of the lien notice.

Appellants cite *United States Fidelity & Guaranty Co. v. Dupont & Co.,* 197 Wash. 569, 85 P. (2d) 1085, to sustain their contention that interest is allowable only from the date of filing a claim of lien. We do not think the cited case is authority for holding that interest was not allowable in the instant case upon the unpaid balance due prior to the filing of the claim of lien. The cited case is authority only for the statement that interest is due from the date of filing the lien notice, and does not hold that interest may not be allowed prior to such date, where the sales were made under terms

such as those shown to exist in the instant case, and where the complaint asks for interest on the unpaid balance due prior to the filing of the claim of lien. The case last referred to and others follow the early case of *Huetter v. Redhead,* 31 Wash. 320, 71 Pac. 1016, wherein we stated:

"Appellant also contends that interest should not have been allowed from February 8, 1900. In this, we think, the appellant is correct. In the lien notice no claim was made for interest. [In the instant case the claim of lien sets out an item of interest of $9.50.] In the complaint no claim was made for interest prior to April 18, 1900, the date of the filing of the lien. [In the instant case the complaint sets out a claim for $9.50, interest due on unpaid balance accruing prior to the filing of the lien.] *Where no claim is made for interest by the lien notice prior to the date thereof, and where the prayer of the complaint is for interest from the date of the lien, we think interest should not be allowed prior to that date.*" (Italics ours.)

On the question of interest, see 36 Am. Jur. 111, § 166; 40 C. J. 263, § 325.

We are of the opinion that, under the pleadings and the facts in this case, the item of $9.50, interest, was properly included in the lien.

We have examined and considered appellants' contentions relative to other items which they claim were improperly included in the lien, and find no merit in them.

■ Appellants contend that the court erred in denying their motion to make the contractor a party to this action.

Was contractor Berry a necessary party in the instant case?

In *Brace & Hergert Mill Co. v. Burbank,* 87 Wash. 356, 367, 151 Pac. 803, we held that the Modern Bungalow Company, as contractor, was not a necessary party to the foreclosure of the liens there involved. We stated that we were *not prepared to say that the owner, under some circumstances, might not rightfully insist upon the contractor being made a defendant,* but that it was not reversible error for the court to proceed to final judgment of foreclosure, in the absence of such request until the close of the trial. In the cited case, we referred to certain decisions from other juris-

dictions cited by the appellants, which hold that the contractor is a necessary party to the foreclosure of a lien by those who had furnished such contractor with material or labor for the carrying on of his contract. The opinion then states:

"These decisions seem to proceed upon the theory that there must be a personal judgment against the contractor before any lien therefor can be established and foreclosed against the property of the owner, which latter right seems to be regarded as a sort of secondary alternative right. We do not so regard the lien right under our statute, which by express terms provides:

" ' . . . every contractor, subcontractor, architect, builder or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, *shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter.*' Rem. & Bal. Code, § 1129 (P.C. 309 § 53).

"Manifestly the lien so created under our statute is not in the least secondary to the personal claim which a contractor himself incurs in causing material to be furnished or labor to be performed." (Italics ours.)

Then follow the statements above referred to, relative to our decision in the cited case.

This question is discussed at length in 100 A. L. R. at p. 128. The *Brace & Hergert Mill Co.* case, *supra,* is cited and discussed on pp. 140 and 141 of that volume.

The supreme court of Oregon has held that a contractor is not a necessary party to a suit to foreclose a mechanic's lien, unless a personal decree is sought against him by the owner. The decisions are based upon a statute which makes the contractor the *agent of the owner,* as does our statute. Rem. Rev. Stat., § 1129. Under the agency theory, as advanced by the Oregon court, the contract is held to be between the person furnishing the materials or performing the labor, and the owner. We are of the opinion that this is a sound theory, under a statute such as § 1129, *supra,* and that, while a contractor might be a proper party under certain conditions, he was not a necessary party in the instant case.

 Under assignment of error No. 9, it is contended that the court erred in holding that respondent was not estopped to assert its lien. This contention is based upon statements claimed to have been made by respondent's manager to appellant Fields, on or about January 25, 1946. It is claimed that the manager requested appellants to leave the contractor alone, and stated that respondent would collect from him. Mr. Mink, respondent's manager, denied that he ever told Mr. Fields that he should not bother Berry, or that he ever told Fields that if he would not bother Berry, respondent would collect from Berry. However, appellants had paid the contractor in full prior to the above conversation.

We are in accord with the conclusion of the trial court, as set out in its memorandum decision, which is to the effect that there is no evidence from which it can be found that appellants were in any way misled to their injury, or that they changed their position for the worse, by reason of anything that was said by respondent's manager in the above-mentioned conversation. In other words, it was the opinion of the trial court that appellants had failed to prove all the elements of estoppel.

 Under assignment No. 10, it is contended the court erred in allowing respondent an attorney's fee of $250 in the superior court, and an additional $250 if an appeal should be taken to the supreme court.

We are of the opinion the attorney's fee allowed by the trial court was reasonable. We are also of the opinion that, under Rem. Rev. Stat., § 1141 [P.P.C. § 180-25], which provides in part:

"The court may allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the *superior and supreme courts* [italics ours],"

if any additional attorney's fee is to be allowed for the appeal to this court, it should be made by the trial court

in mechanic's lien foreclosures. See *Flint v. Bronson*, 197 Wash. 686, 86 P. (2d) 218.

For the reasons herein assigned, the judgment of the trial court is affirmed.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.

